360 P.2d 90

Lynn F. RASMUSSEN, Claimant for Unemployment Security Benefits, and Employment Security Agency, Respondents,

v.

GEM STATE PACKING COMPANY, Appellant.

No. 8928.

Supreme Court of Idaho.

March 7, 1961.

Hawley & Hawley, Boise, for appellant.

Frank L. Benson, Atty. Gen., and Warren Felton, Asst. Atty. Gen., Boise, for respondents.

**SMITH, Justice.**

Respondent Lynn F. Rasmussen is designated as claimant, respondent Employment Security Agency as the agency, and appellant Gem State Packing Company as the employer.

The employer, a meat packer, on November 17, 1959, discharged claimant because of alleged misconduct in connection with his employment. Claimant thereupon filed with the agency a claim for unemployment benefits under the employment security law. The agency's claims examiner determined that claimant was ineligible for benefits, holding that his discharge for misconduct was proper. Claimant's request for a redetermination resulted in reversal of the initial determination.

The employer protested such redetermination, by appeal to the Industrial Accident Board. The Board, by its order, affirmed the redetermination of the agency's appeals examiner, from which order the employer appealed.

The employer urges error of the Board in affirming the appeals examiner's redetermination and in failing to deny benefits to claimant because of misconduct in connection with his employment, and asserts insufficiency of the evidence to support the Board's order of affirmance.

The record shows that in the normal operation of the employer's dressing process of freshly slaughtered beeves, a metal shackle and chain, weighing about 29 pounds, was used in connection with an overhead trolley in the handling of each carcass. Claimant, at the start of each dressing process, disengaged the shackle and chain from the carcass as it was lowered from the trolley. He then placed the shackle apparatus onto a low wooden platform, which protected the cement floor, situate to the immediate rear of his working station, and the shackle apparatus again was put to use by other workmen. After

so disengaging and disposing of the shackle apparatus, claimant then partially dressed the carcass by removing certain portions of the hide.

A metal barrel of 55 gallon capacity, some 40 inches in height from the floor, was placed at a point some five feet to the left of claimant, into which other workmen tossed or placed scrap material, such as the feet, certain bones, and other waste removed from the carcass. The barrel when filled with scrap was carted to the employer's rendering room, in which was situate a bone crushing or shredding machine, an enclosed metal apparatus in which sharp blades rotated at high speed, powered by a 40-horse power electric motor. The scrap, upon being conveyed into this machine, became quickly reduced to shredded material.

The record also shows that a metal object, such as a 29 pound shackle and chain, if conveyed into this powerful, swiftly revolving machine, would create a highly dangerous situation, dangerous to life and limb of persons in the immediate vicinity, as well as destructive to property.

The record further shows, upon the occasion of the alleged misconduct, that claimant did not place the shackle and chain onto the board platform at the immediate rear of his working station, in accordance with the usual, normal practice of his particular dressing operation; in-

stead, he threw or tossed the shackle apparatus to his left at and to the metal barrel at such a sufficient height that the shackle and a portion of the chain landed inside the barrel, with a part of the chain hanging outside over the barrel's rim.

Claimant had been employed at the employer's packing plant continuously for a period in excess of four years. The record satisfactorily shows that he was an experienced employee and knew the various operations at the plant, including the processing of the scrap material through the crushing or shredding machine; and that by virtue of his longevity of service and experience he well knew the dangerous potentialities, should a shackle apparatus find its way into the crushing machine.

Claimant attempts to excuse his act of throwing the shackle apparatus at and into the scrap barrel, and his omission in not removing it or causing it to be removed, on various theories: First, that he had never been instructed not to throw the shackle into the scrap barrel, which theory is reduced to an absurdity in the light of his longevity of service, his experience, and knowledge of the various plant operations. Second, that he knew of other instances when shackles had been thrown into the scrap barrel; this theory, based on his direct examination before the claims examiner, claimant entirely refuted when on cross examination he admitted that such

statement was not based upon any fact within his knowledge, and was shown to be based upon pure conjecture; and Third, admitting that he made no attempt whatever to remove the shackle and chain or cause it to be removed from the barrel, or to warn of its presence therein, claimant attempted to excuse such omission on the theory that he felt he could rely upon a co-employee, working in the immediate area, to remove the apparatus from the scrap container; claimant first stated that he saw his fellow worker "pick up" or take hold of the exposed portion of the chain, but didn't see him put the chain into the barrel, and later admitted that he didn't see what the fellow worker did with the chain.

The record indicates that the portion of the chain which allegedly originally hung outside, over the edge of, the scrap barrel actually was placed inside the container and that the entire shackle apparatus became covered by the scrap material; that the entire contents were dumped at the place normally used for that purpose from where the same, including the metal shackle and chain, were conveyed into the crushing machine; that when the shackle apparatus was conveyed into this machine,—to use the employer's words,—the "crusher equipment was destroyed when metal hit the crusher— metal pieces flew in all directions which could have caused serious injury or loss of life to anyone in this department," addition-

ally several tons of shredded scrap material were ruined.

Noteworthy, claimant failed to appear at the duly noticed hearing before the Board, at which the employer adduced additional evidence in support of its contention of claimant's misconduct in connection with his employment.

Our review of the record fails to disclose any substantial conflict in the evidence. Conflict which claimant asserts, is apparent only, and not real, as is shown by claimant's own testimony, particularly on cross examination to which we have hereinbefore referred.

■ In a proceeding for benefits under the Employment Security Law, the burden is on the claimant to prove that he has met the requirements and conditions for eligibility for benefit payments. Claim of Sapp, 75 Idaho 65, 266 P.2d 1027; Wolfgram v. Employment Security Agency, 75 Idaho 389, 272 P.2d 699; Turner v. Boise Lodge No. 310, etc., 77 Idaho 465, 295 P.2d 256; In re Walker's Claim, 80 Idaho 420, 332 P.2d 199; Cahoon v. Employment Security Agency, 82 Idaho 224, 351 P.2d 477; Norman v. Employment Security Agency, Idaho, 356 P.2d 913.

■ In a proceeding for benefits under the Employment Security Law when the evidence is undisputed, without substan-

tial conflict, it becomes a question of law for the Supreme Court to ascertain whether the evidence will support the conclusion reached by the Industrial Accident Board, I.C. § 72–1368(i); In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P. 2d 397.

A discussion, with definitions of "misconduct" of a workman in connection with his employment as used in the Employment Security Law, I.C. § 72–1366(f), is to be found in 48 Am.Jur., Social Security, Unemployment Insurance, Etc., § 38, pp. 541–542, as follows:

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. * * *."

This Court in Mandes v. Employment Sec. Agency, 74 Idaho 23, 255 P.2d 1049, 1050,

after referring to this concept of the term "misconduct" as so used, stated:

"This conception of misconduct with relation to the unemployment compensation statute seems to be supported by authorities and consonant with the dictionary definitions insofar as they are applicable."

In Johns v. S. H. Kress & Company, 78 Idaho 544, 307 P.2d 217, 219, this Court stated: "While the term 'discharged for misconduct' as used in Sec. 72–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." See also Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533.

The evidence hereinbefore briefly reviewed, clearly shows claimant's disregard of standards of behavior which the employer had a right to expect of him, particularly since claimant was an experienced employee in and about his employer's packing plant, with continuous employment there in excess of four years. He well knew the details of the meat packing operations, the ultimate destination of the contents of the scrap barrel, into which he had

**204**

thrown the shackle and chain, and that the shackle apparatus did not belong in that container. He knew the nature of the shredding machine and well knew the potentially dangerous and destructive results of his dereliction. Clearly those results were foreseeable by an employee of claimant's longevity and experience. His act in throwing the shackle and chain into the barrel, and his failure to remove it or to warn others constituted misconduct in connection with his employment, in the light of the foreseeability of the results, and rendered him ineligible for unemployment benefits. Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533.

Claimant must be held to the degree of care commensurate with the foreseeable consequences of his act, and of his omission of a clear duty after having committed the act. The duty of care required in the doing of an act, or omission to perform a clear duty, "must be commensurate with the danger or hazard connected with the activity." Splinter v. City of Nampa, 70 Idaho 287, 215 P.2d 999, 1002, 17 A.L.R. 2d 665.

The order of the Industrial Accident Board is reversed, and the cause remanded with directions to dismiss the proceeding.

Costs to appellant.

TAYLOR, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.