GRANITE CITY STEEL DIVISION OF NATIONAL STEEL CORPORATION, Plaintiff-Appellant, *v.* THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellees.

Fifth District   No. 78-7

Opinion filed February 8, 1979.

Gerald Tockman and Charles W. Ahner, Jr., both of St. Louis, Missouri, for appellant.

William J. Scott, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Plaintiff, employer, appeals from judgment entered by the Madison County Circuit Court affirming defendant Board of Review's award of unemployment benefits to defendant Cauble. The Board determined that Cauble was not disqualified from benefits because the behavior for which he was discharged was not "intentional."

The facts are essentially undisputed. Cauble had been employed at plaintiff's Granite City facility since March 1973. Until shortly before the July 15, 1976, incident, he worked as a laborer. Three weeks prior to the incident he assumed the position of a millwright helper performing maintenance work in the "basic oxygen furnace operations" (B.O.F.). On July 15, 1976, Cauble was performing maintenance work near the B.O.F. with another millwright. In the immediate area of Cauble's maintenance duties a large and extremely heavy "B.O.F. vessel" used in the transporting of molten metals was suspended directly above an area where a crew of maintenance employees was working. In accordance with well-known and published company safety rules, the maintenance foreman had placed a "safety tag" on the power switch to the "tilt control" of the B.O.F. vessel. The tag contained a warning that the penalty for unauthorized removal was discharge. This "warning" was also contained and set out in a booklet distributed to all employees by plaintiff entitled "General Safety Rules For All Employees." Cauble, employed by plaintiff since March 1973, was well aware of this rule.

Shortly after arrival in his work area near the B.O.F. vessel, and in disregard of the safety tag warning and safety rules, defendant Cauble removed the tag and "threw" the power switch of the B.O.F. vessel's tilt control causing the massive vessel to "slip." Cauble later claimed that he acted upon the request of the millwright with whom he was working (a

nonsupervisory employee) and did not know that the machine had been "tagged out." He was discharged on July 16, 1976, for violating established safety rules and endangering the lives of employees in the area below the B.O.F. vessel.

Cauble filed a grievance against plaintiff protesting the discharge with his union under a current collective bargaining agreement. He also filed a claim for benefits with the Illinois Division of Unemployment Insurance on July 19, 1976. The claim for unemployment benefits was contested by plaintiff on the grounds that Cauble had been discharged for misconduct connected with his work pursuant to the provisions of section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1975, ch. 48, par. 432(A)).

During the processing of his claim for unemployment insurance benefits, the Union pursued the grievance on Cauble's behalf under steps prescribed in the collective agreement. Plaintiff met and conferred with Union representatives concerning the grievance and on July 29, 1976, a final and binding settlement of the grievance was reached by plaintiff and the Union through which Cauble's discharge was converted to a suspension of approximately two weeks without pay. The grievance settlement specifically acknowledged the grave nature of Cauble's actions, stated that future "infractions" would result in discharge, and acknowledged that Cauble was guilty of "misconduct connected with his work."

On August 3, 1976, a claims adjudicator for the Division of Unemployment Compensation awarded unemployment benefits to Cauble. He determined that Cauble was not "negligent or careless by intent" and therefore not guilty of "misconduct." The claims adjudicator's determination stated:

> "The Claimant was terminated because he threw a switch with a safety tag on it. However, he did [so] at the direction of a senior employee which he was working with as a helper. There *is no evidence shown that the claimant was himself negligent or careless by intent * * *.*"

Plaintiff appealed the adjudicator's ruling and a hearing was conducted in connection with that appeal before a hearing referee. Although acknowledging Cauble's violation of a "reasonable company rule," the hearing referee's decision affirmed Cauble's eligibility for benefits on the basis of "mitigating circumstances." The hearing referee's conclusions stated:

> "The Referee concludes from the evidence and the record that the claimant was discharged for reasons other than misconduct connected with his work. Although the claimant did violate reasonable rules, the mitigating circumstances do not warrant the

classification of a 'discharge for misconduct connected with his work.' "

Plaintiff then filed an appeal with defendant Board. Since the Board did not find that Cauble had engaged in conduct evidencing "intent" or "*scienter*," it upheld Cauble's claim for benefits. The Board's decision stated:

"The Referee correctly found that the claimant's action in throwing a safety switch on machinery which was tagged at the time was not intentional, nor was it gross negligence, notwithstanding that it violated a reasonable work rule of the employer and the union. The claimant had very limited experience in his job and he was told to throw the switch by a senior employee with whom he was working and who, he assumed, was giving him proper instructions. Accordingly, we find that the claimant was not subject to a denial of benefits under the provisions of Section 6028 of the Act."

Plaintiff then sought a review of the Board's decision by filing in the Madison County Circuit Court a complaint under the Administrative Review Act. The trial court's order affirmed the Board's decision that Cauble was eligible for unemployment compensation. That order defined the issues as:

"1. Whether or not the Board of Review of the Department of Labor erred in finding that the employee, Cauble, was not in violation of Ill. Rev. Stat., Ch. 48, Sec. 432 and,

2. Whether such a ruling should fall because it infringes upon Federal Labor Law standards."

The trial court found that

"* * * neither the Unemployment Insurance Act nor the Department of Labor's interpretation thereof constitutes any infringement on the Federal Labor Law.

* * *

* * * and that the decision of the Board * * * is not contrary to the manifest weight of the evidence * * *."

It is from this order that plaintiff brings this appeal. The parties agree that the issues are whether the award of unemployment benefits to Cauble is federally preempted (by the National Labor Relations Act and the Occupational Safety and Health Act) and whether the requirement of wanton and intentional behavior for a finding of "misconduct connected with work" violates legislative intent and public policy. Because of our holding with respect to the second issue, the parties' arguments with respect to the preemption issue are not applicable and we, therefore, make no ruling on the preemption issue. This opinion is confined to the interpretation of "misconduct" issue, the issue upon which we reverse the trial court.

■■ With respect to Cauble's eligibility for unemployment benefits in this matter, the Illinois Unemployment Insurance Act provides:

> "An individual who has been discharged for misconduct connected with his work * * * shall be ineligible for benefits * * *." (Ill. Rev. Stat. 1975, ch. 48, par. 432(B).)

The administrative rulings, affirmed by the trial court, interpreted "misconduct" to require "intentional" misbehavior. Because of Cauble's limited experience at the post of millwright helper and because he had been requested by another employee to pull the switch, these tribunals determined that intent was missing from Cauble's act and therefore his breach of a safety rule did not amount to misconduct within the meaning of section 602(B) (par. 432(B)). We disagree.

As we held in *Nestle Co. v. Johnson* 68 Ill. App. 3d 17, 20, 385 N.E.2d 793, 795 (5th Dist. 1979),

> "[W]e are not bound to give the same measure of deference to an administrative agency's construction of a statute that we give to its findings of fact. While we might affirm a factual conclusion as not against the manifest weight of the evidence though we would have reached the opposite conclusion, we cannot let stand a decision based upon an erroneous construction of a statute."

The question of whether "misconduct" as used in section 602(B) (par. 432(B)) must involve intentional behavior has not been answered by our Illinois Supreme Court nor any of our appellate courts.

An employee who falsely denied a prior felony conviction on an employment application to his employer detective agency was discharged for misconduct connected with his work. (*Roundtree v. Board of Review* (1972), 4 Ill. App. 3d 695, 696-97, 281 N.E.2d 360.) The court said,

> "There can be no doubt that the falsification of an employment application is a proper ground for dismissal. In *Price v. Sanitary District of Chicago*, 123 Ill. App. 2d 2, 9, 259 N.E.2d 613, 617, the court affirmed the reasonableness of a Civil Service Rule which provided for the dismissal of any employee who made false statements of material facts in his application for employment. The court also found, in *Stanulus v. Budd*, 1 Ill. App. 2d 334, 336, 117 N.E.2d 655, 656, that concealment of a felony conviction on an employment application came within the definition of 'cause detrimental to service,' that term expressing a ground for dismissal under the Metropolitan Transit Act, Ill. Rev. Stat. 1967, ch. 111 2/3, par. 328.
>
> * * *
>
> * * * By deliberately coloring his employment application,

claimant committed an act of misconduct *harmful to his employer* who had hired claimant in reliance on the specific information given in the application form." (Emphasis added.)

While Roundtree's act probably was intentional, the court did not enunciate intent as a necessary element for the misconduct disqualification. In fact, the court's discussion of misconduct in connection with work seems to speak in terms of conduct harmful to the employer or to service.

For guidance we look to the public policy expressed in our Unemployment Insurance Act:

"§100. Declaration of public policy. As a guide to the interpretation and application of this Act, the public policy of the State is declared as follows: Economic insecurity due to involuntary unemployment has become a serious menace to the health, safety, morals and welfare of the people of the State of Illinois. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Poverty, distress and suffering have prevailed throughout the State because funds have not been accumulated in times of plentiful opportunities for employment for the support of unemployed workers and their families during periods of unemployment, and the taxpayers have been unfairly burdened with the cost of supporting able-bodied workers who are unable to secure employment." (Ill. Rev. Stat. 1975, ch. 48, par. 300.)

The Act was intended to promote "the health, safety, morals and welfare of the people." Toward this end the Act intended to relieve economic insecurity due to involuntary unemployment. The legislature, however, limited the relief by providing that certain circumstances shall disqualify a claimant from eligibility for benefits—"misconduct connected with work" is such a circumstance. We believe that the legislature reasoned that rewarding individuals out-of-work on account of their own misdeeds would in some instances be inimical to the promotion of public health, safety, morals and welfare. While we agree that cases of willful disregard of employment rules may be one of these instances, we also believe that another such instance exists where, as here, the circumstances may lack "*scienter*" or "intent" by the employee but do include acts by an employee involving such a magnitude of danger to others that to award that employee unemployment benefits would clearly violate the overriding policy of promoting public welfare. We hold that the

misconduct disqualification is not limited to circumstances of intentional wrongdoing and that each case of this nature must be determined in accordance with the facts involved.

Our review of the annotation at 26 A.L.R.3d 1356 (1969) and our reading of the cases summarized therein lead us to conclude that our holding in this case and our interpretation of section 602(B) (par. 432(B)) "misconduct" are consistent with decisions in other jurisdictions. We have paid particular attention to cases in which the employee misconduct involved a breach of safety rules and the endangering of human life.

The Supreme Court of Michigan considered the issue of whether the discharge of an employee working as a fireman in a boiler room who fell asleep on the job was for misconduct such as would disqualify him for unemployment compensation. (*Bell v. Appeal Board* (1960), 359 Mich. 649, 103 N.W.2d 584.) The claimant's contention was that he had not intended to fall asleep but that his sleeping was caused by prescribed medication. Lack of intent was the thrust of his appeal. The Michigan Supreme Court affirmed the denial of benefits. In so doing the court found that the claimant was guilty of misconduct by either of the two definitions of the word as employed in its previous cases:

> "* * * 'a breach of those standards of conduct reasonably applicable to the industrial task assigned * * * [and a breach] of those standards of ethics and morals applicable to mankind in general.' " (359 Mich. 649, 652, 103 N.W.2d 584, 585-86.)

The court emphasized the danger the claimant's behavior created for the lives of fellow employees and the property of the employer.

> "The job for which he was hired was one of great responsibility. The results of a boiler explosion, either to him as he dozed nearby, or to his fellow workmen, or to the plant itself, we need not describe. Judged by any criterion his act was 'misconduct connected with his work.' " 359 Mich. 649, 652-53, 103 N.W.2d 584, 586.

The Supreme Court of Idaho reversed an affirmance of unemployment benefits to an employee discharged for throwing a metal shackle apparatus into a waste barrel which he knew was destined for a shredding machine known to be incapable of handling such objects. (*Rasmussen v. Gem State Packing Co.* (1961), 83 Idaho 198, 360 P.2d 90.) The opinion states,

> "The record also shows that a metal object, such as a 29 pound shackle and chain, if conveyed into this powerful, swiftly revolving machine, would create a highly dangerous situation, dangerous to life and limb of persons in the immediate vicinity, as well as destructive to property." 83 Idaho 198, 201, 360 P.2d 90, 91.

The court cited with approval the following definition of

"misconduct in connection with employment" provided in 48 Am. Jur. *Social Security, Unemployment Insurance and Retirement Funds,* §38, at 541-42 (1943).

> " 'Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. * * *' " 83 Idaho 198, 203, 360 P.2d 90, 92.

The court reiterated its definition of misconduct as,

> " '* * * wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules, or a disregard of standards of behavior which the employer has a right to expect of his employees ' " (83 Idaho 198, 203, 360 P.2d 90, 92-93)

and held,

> "The evidence hereinbefore briefly reviewed, clearly shows claimant's disregard of standards of behavior which the employer had a right to expect of him * * *. His act of throwing the shackle and chain into the barrel, and his failure to remove it or to warn others constituted misconduct in connection with his employment * * * * * *

> Claimant must be held to the degree of care commensurate with the foreseeable consequences of his act * * *. The duty of care required in the doing of an act * * * 'must be commensurate with the danger or hazard connected with the activity.' " 83 Idaho 198, 203-04, 360 P.2d 90, 93.

The undisputed facts in the case before us depict a situation wherein an employee had been aware of the safety rule he breached since his employment commenced some three years earlier. He knew the potential danger of the machinery where he worked. He was well aware of the red-tagging procedures of dangerous machinery and the company's regulations with respect thereto. Further, he was reminded of the importance of the tagging rules by the language written on the red tag attached to the switch he threw warning that the penalty for unauthorized removal was discharge. In the face of this knowledge Cauble removed the tag and threw the power switch on a massive piece of machinery, thereby endangering the lives of employees working below the vessel. That he did so at the request of another employee does not minimize his blatant failure to follow a well-published and mandatory company safety

procedure. Both he and his union representatives recognized the seriousness of his misconduct by agreeing to a two-week-no-pay employment suspension in compromising his grievance. To allow such a breach of duty to employer and fellow employee in a work environment requiring strict adherence to safety rules to be rewarded by an award of unemployment benefits is contrary to the intent and purpose of the Illinois Unemployment Insurance Act. To award compensation to plaintiff in this case and under such circumstances would be tantamount to the "payment" of an employee for misconduct.

Accordingly, we reverse.

Reversed.

JONES and KARNS, JJ., concur.