(No. 59897

MARY JACKSON, Appellee, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR *et al.*, Appellants.

*Opinion filed February 22, 1985.—Rehearing denied March 29, 1985.*

502

504

GOLDENHERSH, J., CLARK, C.J., and SIMON, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of Chicago, of counsel), for appellant Board of Review.

Robert E. Cronin, of Isham, Lincoln & Beale, of Chicago, for appellant Commonwealth Edison Company.

Timothy Huizenga, Marilyn F. Johnson, Jeffrey B. Gilbert, William J. Martinez and James O. Latturner, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Mary Jackson, had been employed as a janitor by Commonwealth Edison Company since 1966. Her work hours were from 5 p.m. to 1 a.m. On May 5, 1982, she was discharged for drinking intoxicating liquor on the job. She filed a claim for unemployment compensation, which was denied by a claims adjudicator. Plaintiff appealed this denial, and a hearing was held before a referee, who affirmed the claims adjudicator's decision and held that the plaintiff was disqualified for benefits. This decision was appealed by the plaintiff to the Board of Review of the Department of Labor, which affirmed the decision of the referee. Plaintiff then filed her complaint in the circuit court of Cook County under the

Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*) (the Administrative Review Law). The circuit court reversed the decision of the Board of Review. On appeal, the appellate court affirmed. (121 Ill. App. 3d 963.) We granted the Board of Review's petition for leave to appeal.

The hearing before the referee was conducted in a very informal manner. Neither the plaintiff nor her employer was represented by counsel. The referee conducted the hearing, asking questions of the employer's representatives and of the plaintiff alternatively. Two persons were present representing the employer: Dorothy Paige, Supervisor of Industrial Relations, and William Allen, a staff assistant in the office building. The record of this informal interrogation disclosed the following. On the day plaintiff was terminated, an assistant supervisor named Myra found her at 7 p.m. with a half can of beer and a half bottle of vodka. Myra called a supervisor named Stanley, who told plaintiff he had no alternative but to terminate her employment because she had been warned about a week before by Maggie Ritchie, another supervisor, about drinking on the job. Shortly before Ritchie had talked to the plaintiff, Allen had also spoken to her about her drinking problem. She was told that if she was caught drinking, her employment would be terminated. For about a year before plaintiff's termination, Allen had been aware that plaintiff had been drinking on the job, but because of her years of service, she had been given warnings but had not been disciplined. Her immediate supervisor, Stanley, had given an informal report or memorandum to Allen. This document was not introduced into evidence, but it was referred to at length by the referee, who quoted from its contents in asking questions. The referee referred to specific entries on this memorandum. Although he stated the month and day the entries referred to, he

did not state the year and, apparently, did not refer to these entries in chronological sequence. The memorandum stated that on February 10, the plaintiff was asleep in a chair with a beer can on the table. Stanley awakened her and told her to go home. The report stated there was "no sense discussing the situation at the moment. She was tipsy. We discussed the matter the next day." The report stated on April 6, "Found Mary in room 633 eating lunch drinking beer. Told her she was very close to being terminated." Under date of January 20 the report stated, "When I walked in she was sitting at the table with a can of beer in her hand and a six pack on the table."

Following her discharge, plaintiff filed a grievance with her union. In her letter to the union, she said she was discharged for drinking a can of beer on the job. At the hearing when she denied she was drinking on the job, the referee pointed out to her that, in her letter to the union, she did not deny the charge or assert that it was untrue.

On May 10, a few days after having been discharged, plaintiff entered a hospital and completed a 28-day treatment program for alcoholism. The employer had an alcoholism program, but plaintiff said that she did not contact a representative of that program before she was discharged. She admitted to the referee that she had had a drinking problem for quite some time.

Allen informed the referee that it is a violation of company policy to drink while on the job. He also stated that he held a meeting of the employees about every six months, at which meeting he informed the employees that "if anyone was caught drinking alcoholic beverages in the building, they would be terminated. No if, and or buts about it." Plaintiff admitted to the referee that she had heard some of these announcements. From the evidence presented to the referee, it appears the plaintiff

had not been given a written warning concerning her drinking on the job, but there is evidence that she had been verbally warned on several occasions.

Plaintiff told the referee that "no one caught me drinking." She denied that on the day she was terminated she had a half can of beer and a half bottle of vodka. She stated she was collecting aluminum cans and on the day she was discharged she had a beer can and some soda cans. She also denied that she was drinking on the other occasions. She admitted that on one occasion she had had a beer with her lunch and was warned about having beer with her lunch, but insisted that on the occasion when she was discharged she had not been drinking. When the referee reminded her that the evidence was that on the day of her discharge she had a half can of beer and an open bottle of vodka, she stated that was a lie. The referee replied, "Well, that is a matter of credibility," and reminded her that she had not stated it was a lie in her letter to the union.

This case involves the construction of the provision of section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 432), which states: "An individual shall· be ineligible for benefits for the week in which he has been discharged for *misconduct connected with his work* \* \* \*." (Emphasis added.) Before considering this provision of the statute in light of the facts of this case, we must point out that every justifiable discharge does not disqualify the discharged employee from receiving employment benefits under the Act. An employee's conduct may be such that the employer may properly discharge him. However, such conduct may not constitute "misconduct connected with his work" which disqualifies the employee from receiving unemployment benefits. See Annot., 26 A.L.R.3d 1356, 1358-60 (1969).

As noted above, the hearing before the referee was informal, neither party was represented by counsel, and

the referee conducted the hearing, asking questions of one party and then the other. Also, as noted, much of the evidence against the plaintiff, as well as some of the plaintiff's evidence, was hearsay. Although the appellate court in this case noted that most of the evidence against the plaintiff was hearsay, it stated that, because of other facts, it need not be concerned with the hearsay problem.

In this court, plaintiff insists that we cannot consider any of the hearsay evidence presented by the employer. Plaintiff argues that "[o]nly the legally competent evidence is properly before this Court on review, and it is only upon this non-hearsay evidence that the Court's decision can be based." This is not an accurate statement of the law of this State. The cases cited by the plaintiff as authority for this statement are cases in which hearsay testimony was admitted over the objection of the opposing party, and thus are not apposite in this case, where no objections had been made. (See *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195; *Russell v. License Appeal Com.* (1971), 133 Ill. App. 2d 594.) Also, the cases relied upon by the appellate court in this case, in support of its statement that "[i]t has been repeatedly held that hearsay is 'inadmissible in an administrative proceeding,'" were cases in which hearsay evidence was admitted over objections. See *Nendza v. Board of Review* (1982), 105 Ill. App. 3d 437; *Spaulding v. Howlett* (1978), 59 Ill. App. 3d 249.

In our case there were no objections to the hearsay evidence. It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect. (*People v. Akis* (1976), 63 Ill. 2d 296; *People v. Trefonas* (1956), 9 Ill. 2d 92; *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487; 1 Wigmore, *Evidence* sec. 18 (Tillers rev. ed. 1983).) An extensive annotation on this subject discloses

that the overwhelming weight of authority supports the rule announced in these cases. See Annot., 79 A.L.R.2d 890 (1961).

Section 3—111(b) of the Code of Civil Procedure provides that technical errors in proceedings before an administrative agency, or its failure to observe technical rules of evidence, cannot constitute grounds for reversal. (Ill. Rev. Stat. 1981, ch. 110, par. 3—111(b).) This court has held that a similar provision contained in section 8 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1939, ch. 120, par. 447) did not abrogate the fundamental rules of evidence, and held that the hearsay evidence rule was not eliminated from administrative proceedings by this provision. (*Novicki v. Department of Finance* (1940), 373 Ill. 342.) Thus the hearsay evidence rule applies to the administrative proceedings under the Unemployment Insurance Act, but hearsay evidence that is admitted without objection may be considered by the administrative body and by the courts on review.

The appellate court in this case noted that no objection was made to the hearsay evidence "because plaintiff acted pro se." This fact may explain the reason for the failure to object to the employer's hearsay evidence, just as it explains the reason for the failure of the employer to object to some statements made by the plaintiff at the hearing which were hearsay. It does not, however, alter the rule. The hearing was conducted by the referee who also was to make the decision in the case. The statements of both the plaintiff and the employer's representatives were before the referee. It was his prerogative to give those statements whatever weight he thought they should be given.

The referee found that the claimant had received prior warnings that drinking on the job was a violation of company rules and grounds for discharge, and in his conclusion stated that, despite prior warnings, the claim-

ant knowingly violated a reasonable company policy prohibiting drinking on the job. Section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 3—110) provides that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. There was evidence presented to the referee that, on three occasions prior to the date of her discharge, plaintiff had been drinking on the job and had been warned about such conduct and that on the day of her discharge, she had a half can of beer and an open bottle of vodka. There is also evidence that she had had a drinking problem for some time prior to her discharge. In addition to the warnings on the occasions she had been seen with liquor on the employer's premises, she had received warnings from Allen when he had met with the employees about every six months. The findings and conclusions of the referee are not against the manifest weight of the evidence.

The question then arises whether plaintiff's conduct constituted "misconduct connected with [her] work" which would disqualify her from receiving unemployment benefits. The conclusion of the referee was that she is subject to disqualification under the Act.

Plaintiff contends that an employee's conduct in violation of work rules, although sufficient grounds to warrant discharge, does not constitute "misconduct" under the Act unless the employer can show some substantial actual harm to its interests from such violations.

The appellate court based its decision on its perception that the phrase "misconduct connected with his work" requires a demonstration of some harm or some degree of potential harm to the employer. The appellate court concluded that there was no showing of any harm or potential harm from the plaintiff's conduct.

The Board of Review argues that no harm or potential harm to the employer need be shown and contends

that a deliberate violation of a reasonable company rule prohibiting the use of intoxicants on the job constitutes misconduct connected with the plaintiff's work.

This court has not had the occasion to address this question. The parties and the appellate court referred to four appellate court cases in this State that have determined whether the employee's action constituted "misconduct" connected with the work so as to disqualify the employee from benefits under the Act. (*Robinson v. Department of Labor* (1983), 118 Ill. App. 3d 986; *Winklmeier v. Board of Review* (1983), 115 Ill. App. 3d 154; *Granite City Steel v. Board of Review* (1979), 68 Ill. App. 3d 264; *Roundtree v. Board of Review* (1972), 4 Ill. App. 3d 695.) A clear holding as to whether harm or potential harm to the employer must be shown cannot be found in these cases. *Granite City Steel* discusses the tests of misconduct in greater detail than do the other three cases and seems to hold that a person may be disqualified from receiving unemployment benefits (1) for wilful disregard of employment rules, or (2) in situations where the employee's conduct lacks intent, but includes acts involving such a magnitude of danger to others that to award that employee unemployment benefits would violate the policy of the Act.

We do not agree with the plaintiff or the appellate court that to establish misconduct under the Act it is necessary to show harm or potential harm to the employer. The general nature of disqualifying misconduct has been discussed in *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640, in the following language:

> "[T]he intended meaning of the term 'misconduct,' as used in sec. 108.04(4)(a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the

right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer."

*Boynton* was cited and the above language quoted in *Maywood Glass Co. v. Stewart* (1959), 170 Cal. App. 2d 719, 724, 339 P.2d 947, 950-51. In *Green v. Brown* (La. App. 1961), 136 So. 2d 147, 149, the court, although not citing *Boynton* or *Maywood Glass Co.*, used identical language in defining "misconduct," stating that the term has been uniformly defined by the courts of Louisiana in that manner. This definition of disqualifying misconduct thus seems to have gained acceptance. Although it is stated in broad and general terms, it has not limited the disqualification to cases in which the employee's conduct is harmful or potentially harmful to the employer, although conduct which is harmful or potentially harmful to the employer may fall within this definition. For an application of this definition or similar definitions in the various States, see Annot., 26 A.L.R.3d 1356 (1969).

Every violation of a company rule will not constitute misconduct. The rule must be a reasonable rule governing the conduct or performance of an employee. There must be some nexus between the rule and the employment. An example of a rule that does not directly concern the employment, as given by one commentator, is a rule against wage garnishments. (See Packard, *Unemployment Without Fault: Disqualifications For Unemployment Insurance Benefits*, 17 Villanova L. Rev. 635, 647 (1972).) Thus a reasonable company rule or order governing the conduct and performance of an employee which directly concerns the employment constitutes "standards of behavior which the employer has the right to expect of his employees," as that phrase is used in

the definition of misconduct quoted above. In addition to the existence of such a rule, it must be shown that the breach of the rule is deliberate or its equivalent, as stated in the above-quoted definition.

The referee found that the plaintiff violated a *reasonable* company policy prohibiting drinking on the job. The plaintiff, in her brief, acknowledges that Commonwealth Edison's rule which prohibits the consumption of alcoholic beverages on the job is reasonable. Her brief states: "In fact, had the record below contained competent evidence that Jackson had repeatedly drunk on the job; that she had been warned about such conduct and nevertheless persisted; and that, as a consequence of her conduct, she had harmed Edison's interests, this court's task would be simple." Thus the reasonableness of the rule and its nexus to the employment are not at issue in this case. Therefore, all this court need consider is whether there was a deliberate violation or breach of the rule, or its equivalent. (See Packard, *Unemployment Without Fault: Disqualifications For Unemployment Insurance Benefits*, 17 Villavona L. Rev. 635, 647-48 (1972).) There is no requirement that such conduct harm the employer.

As noted above, the administrative body and this court need not disregard unobjected-to hearsay evidence. The weight to be given to the evidence and the credibility of the witnesses are within the province of the administrative agency. Under the Code of Civil Procedure, findings and conclusions of fact are *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) A reviewing court cannot reweigh the evidence. Its function is to determine whether the administrative agency's decision is against the manifest weight of the evidence. *Nendza v. Board of Review* (1982), 105 Ill. App. 3d 437, 442-43.

In this case, the record shows that there were several

violations by the plaintiff of the employer's rule against drinking alcoholic beverages on the job. There is also evidence in the record that the plaintiff had been warned several times about drinking on the job. The record plainly reflects deliberate violations of the rule. The conclusion of the referee that "[d]espite prior warnings [the plaintiff] knowingly violated a reasonable company policy prohibiting drinking on the job" is not contrary to the manifest weight of the evidence.

We have dealt here only with the violation of a company rule as constituting disqualifying misconduct. We need not here consider other conduct which does not violate a rule of the employer but which may constitute disqualifying misconduct. See Packard, *Unemployment Without Fault: Disqualifications For Unemployment Insurance Benefits*, 17 Villanova L. Rev. 635, 646 (1972).

The judgments of the appellate court and of the circuit court of Cook County are reversed, and the decision of the Board of Review of the Department of Labor is affirmed.

*Judgments reversed;*
*Board of Review affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. The majority has taken from a Wisconsin case (*Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 296 N.W. 636) a definition of the statutory term "misconduct" (105 Ill. 2d at 507), and although I find it amorphous to the point of being meaningless, I accept it for the purposes of this case. I am of the opinion that the record does not support the finding that plaintiff was guilty of misconduct.

It is true that plaintiff, on at least two prior occasions, had been cautioned by a superior about drinking on the job and that she had a drinking problem. There is

no evidence, however, that she had been drinking beer or any other alcoholic liquor on the night of the occurrence upon which the discharge is allegedly based. She admitted having possession of the beer can but denied having any vodka. Her explanation of why she had the beer can is entirely plausible, and nothing in the record contradicts it.

The testimony concerning prior admonitions is vague and confusing. One witness thought plaintiff had been given a written warning but later decided he was in error. The individuals who were present on the night of the occurrence were not called as witnesses, and plaintiff's unequivocal statement that she had not been drinking on that occasion stands undenied and undisputed in the record.

I do not quarrel with the right of the employer to enforce a rule against drinking on the job. I am of the opinion, however, that the deprivation of unemployment compensation to an employee discharged after 16 years of service should be supported by proof that violation of the rule was the actual cause of the discharge. Informality in the proceedings before the claims adjudicator and the referee is, I am sure, commendable, but should not be pursued to the point of completely omitting evidence which sustains the finding upon which the decision is based.

CLARK, C.J., and SIMON, J., join in this dissent.