A AND P MOTORS, INC., *et al.*, Plaintiffs-Appellees, v. JIM EDGAR, Secretary of State, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 86—2381

Opinion filed July 6, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellants.

Robert A. Whitebloom, of Marks, Marks & Kaplan, Ltd., of Chicago (Michael W. Pinsof, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

The Illinois Secretary of State, defendant herein, appeals from a judgment of the circuit court of Cook County entered pursuant to a complaint for administrative review.[1] The circuit court reversed defendant's determination to revoke a certificate of title issued for plaintiff's car. Defendant now contends that the circuit court erred in finding that the administrative decision was arbitrary, capricious and against the manifest weight of the evidence, and that the administrative decision was based on hearsay evidence.

The evidence involves a certificate of title issued to plaintiff for a "stripped" 1982 Eldorado Cadillac which plaintiff purchased for nearly $5,000 in 1984 from a salvage company. Plaintiff, which was licensed to rebuild automobiles, then rebuilt the vehicle using a front-end assembly, two doors and a deck lid. These parts were purchased by plaintiff from Associated Auto Parts, Inc. (hereafter AAP), located in Roselawn, Indiana.

At the administrative hearing John Janulis testified that plaintiff had often done business with AAP since 1976. When the parts were purchased in 1984, plaintiff paid by check and received receipts from AAP listing the parts. The doors and deck lid did not have vehicle identification numbers (VINs) affixed to them. AAP's receipts, however, listed the VIN on it, and the receipt for the front-end assembly also contained the VIN for the vehicle from which that component originated. The purchases were reported in plaintiff's parts book, which listed the VIN on the vehicles from which the parts came. The vehicle was reconstructed and plaintiff obtained title from defendant for it.

Edward Rolla did automobile body repair and painting for plaintiff. He did not see any VIN stickers on the doors and deck lid which

---

[1]The corporate plaintiff is owned by the individual plaintiffs and for purposes of this order "plaintiff" will refer to the corporate entity.

AAP delivered for repair of the 1982 Cadillac.

Marion Vrtik was an auto theft investigator for defendant. Vrtik would inspect reconstructed automobiles to determine if legitimate parts were used in the reconstruction. He examined plaintiff's parts book and checked the VIN for the parts purchased from AAP for the Cadillac. Vrtik indicated that both doors and the deck lid would have had VIN stickers affixed to them and the front-end assembly would have had a pollution sticker. He also explained that the National Automobile Theft Bureau (NATB) maintained the VIN for every vehicle manufactured by a major automobile company in North America or overseas. When Vrtik checked the NATB records against the VIN of the parts used by plaintiff to reconstruct the Cadillac, he could not find any auto manufactured by General Motors Corporation which had those numbers. Vrtik also recounted that his investigation in July 1984 revealed that the State of Indiana in February 1982 had revoked AAP's license to do business and seized its property for nonpayment of taxes.

Defendant adopted the findings of fact of his hearing officer, who had concluded that Janulis and Rolla were credible witnesses. Defendant found that plaintiff's records appeared to be superficially in compliance with applicable State regulations. However, defendant concluded that the records were incorrect because the VIN listed for each of the parts in question that plaintiff used to reconstruct the vehicle was nonexistent. These VINs were also represented as correct in plaintiff's affidavit to have title issued to the rebuilt Cadillac even though, as defendant concluded, plaintiff knew or through proper investigations could have learned of their nonexistence. Thus, defendant took the position that plaintiff did not maintain proper records. Based on the facts, defendant concluded that plaintiff had acted imprudently and in bad faith, and that the certificate of title should be revoked. Ill. Rev. Stat. 1983, ch. 95½, par. 3—704(1).

The primary issue in this case is whether one who is required to keep records of part sources because it is an automobile rebuilder (92 Ill. Adm. Code 1020.20 (1985); Ill. Rev. Stat. 1983, ch. 95½, par. 5—401 (now repealed); Ill. Rev. Stat. 1985, ch. 95½, par. 5—401.2) may be penalized when the rebuilder obtains automobile parts and the source listed for these parts is fictitious. In the present case, plaintiff's vehicle contains significant components that cannot be shown to have been legitimately obtained by plaintiff's supplier. It is apparently plaintiff's position that if defendant's revocation of the title to plaintiff's car is upheld, it would be tantamount to placing a nondelegable duty upon an automobile rebuilder to show that the parts used origi-

nated from clearly legitimate sources, and that this is improper.

At the time that plaintiff purchased the disputed parts, section 5—100—1 of the Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 5—100—1) set forth the legislative basis for imposing the duty of parts recordation on automobile rebuilders:

> "The General Assembly finds that: (1) crimes involving the theft of motor vehicles and their parts have risen steadily over the past years, with a resulting loss of millions of dollars to the residents of this State; and (2) essential to the criminal enterprise of motor vehicle theft operations is the ability of thieves to transfer or sell stolen vehicles or their parts through legitimate commercial channels making them available for sale to the automotive industry; and (3) motor vehicle dealers, used parts dealers, scrap processors, automotive parts recyclers, and rebuilders are engaged in a type of business which often exposes them and their operations to pressures and influences from motor vehicle thieves; and (4) elements of organized crime are constantly attempting to take control of businesses engaged in the sale and repair of motor vehicles so as to further their own criminal interests; and (5) close and strict government regulation of motor vehicle dealers, used parts dealers, scrap processors, automotive parts recyclers, and rebuilders will significantly reduce the number of motor vehicle-related thefts in this State. It is, therefore, the intent of the General Assembly to establish a system of mandatory licensing and record keeping which will prevent or reduce the transfer or sale of stolen motor vehicles or their parts within this State."

Thus, plaintiff was on notice that, as an automobile rebuilder (Ill. Rev. Stat. 1983, ch. 95½, par. 5—100), it was entering into an area of considerable State regulation. *Bionic Auto Parts & Sales, Inc. v. Fahner* (7th Cir. 1983), 721 F.2d 1072, 1079; see *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320.

■ Given this statutory framework, we conclude that defendant acted properly in revoking plaintiff's title. In adopting this position, we believe that the legislative intent in imposing such stringent requirements upon automobile rebuilders should be given proper effect, and that, if so, those engaged in such occupation will recognize their obligation that the parts which they purchase for use in such vehicles must be shown by them to have originated from lawful sources.

■ The second issue raised is whether portions of the testimony of auto theft investigator Vrtik were properly admitted at the admin-

istrative hearing. Plaintiff did not object at those proceedings that Vrtik's testimony regarding his consulting the State of Indiana for the status of AAP or the results of his contact with the NATB concerning the VIN of the automobile components in plaintiff's car was hearsay. Such issue was initially raised in the circuit court. Regardless of whether the testimony of which plaintiff complains was hearsay or not, plaintiff's claim concerning its admissibility came too late, and, thus, any basis for plaintiff's contesting the introduction of such testimony was waived. *Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 508, 475 N.E.2d 879.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

QUINLAN, P.J., and MANNING, J., concur.