NORTHERN SERVICE CENTER, INC., Plaintiff-Appellee, v. THE BOARD OF REVIEW, Department of Employment Security, Defendant-Appellant (Rose M. Johnson, Defendant).

Third District   No. 3—87—0450

Opinion filed April 8, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn Kaplan, Assistant Attorney General, of Chicago, and Shawn W. Denney, Assistant Attorney General, of Springfield, of counsel), for appellant.

Richard T. Buck, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister, & Hutchison, of Joliet, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Rose M. Johnson, hereinafter referred to as the claimant, was employed in June 1980 as a clerk/cashier in one of the stores owned and operated in Will County by the plaintiff, Northern Service Center, Inc. (hereinafter NSC). The nature of the business of the stores is that of a service station for motor vehicles. The places of business also engage in the sale of lottery tickets. Robert Georgantas, Sr., is

president of NSC and his son, Robert Georgantas, Jr., is vice-president.

On October 17, 1983, the claimant suffered a heart attack and during her convalescence her employer, NSC, determined that it was necessary to fill her position at the business located in Lockport and her employment was terminated in February 1984. The claimant contacted the Illinois Department of Labor and was advised by Mr. Moynihan, an employee of the Department, that she could not be terminated during her sick leave. She was also advised by Mr. Moynihan to write her employer, NSC, in regard to her employment status. By correspondence dated April 6, 1984, the claimant was advised by NSC as to the requirements necessary to be fulfilled in order for her to return to work and the correspondence further contained a statement that NSC considered her status as that of being on sick leave.

On April 28, 1984, claimant returned to work after the employer, NSC, had received a release from her doctor.

On September 20, 1984, the claimant was informed by letter from her employer, Robert Georgantas, Jr., that she had been guilty of misconduct to the customers. At a meeting between plaintiff and Robert Georgantas, the latter refused to inform claimant of the specific instances of misconduct, nor would he reveal the names of those who had purportedly complained.

The claimant's employment with NSC was terminated on November 15, 1984, and thereafter she applied to the Illinois Department of Employment Security for unemployment insurance benefits. Claimant's request for benefits was denied by a claims adjudicator. The adjudicator's decision was based upon a determination that claimant was discharged for misconduct connected with her work. A determination of such misconduct supports a denial of benefits. Ill. Rev. Stat. 1983, ch. 48, par. 432(A).

The claimant appealed the adjudicator's decision and hearing was held on January 4, 1985. In the course of the hearing, Robert Georgantas, Jr., testified that claimant was discharged because she was rude to customers. The witness testified that he received complaints about claimant's conduct between the time period of August 1984 to the date she was discharged. The witness testified as to five incidents concerning customers' dissatisfaction with claimant's conduct. The testimony was that the first complaint was made on the phone and came from a black woman who complained that she had been called a "nigger son-of-a-bitch" when she was purchasing lottery tickets. The caller further stated that the claimant had thrown lottery tickets and money at her through the slot of the cubicle where claim-

ant was stationed for the purpose of selling tickets. Another incident testified to was of the same nature but was related in person to Robert Georgantas, Jr., by a gentleman who claimed that a mistake had been made in his lottery tickets and when the error was called to claimant's attention she refused to remedy the mistake and threw the tickets at him. The third incident was a phone call made by a customer complaining of the claimant's rudeness. The fourth incident, also made by telephone, was from a black woman who also complained of rudeness and tickets being thrown at her. The fifth incident complained of was made by a regular customer who stated that when paying for work done on his daughter's car the claimant was extremely rude and "she [claimant] just—she [sic] threw everything at me."

Prior to the witnesses' testimony concerning the fourth and fifth incidents, counsel for claimant objected to such testimony on the grounds that it was hearsay.

Claimant, testifying in her own behalf, categorically denied that she had ever been rude and denied that she had ever thrown tickets at anyone or made any racial remarks. The claimant testified that her discharge was an act of retaliation because she had contacted the Department of Labor when her employer attempted to discharge her while she was convalescing from her heart attack.

Further recitation of the testimony and the facts adduced therefrom during the hearing will be set forth as the same become pertinent to the disposition of this appeal.

On March 11, 1985, the hearing referee issued a decision affirming the claims adjudicator's denial of benefits to the claimant. This decision was appealed to the Board of Review. The Board rendered a decision on January 28, 1986, which reversed the decision of the referee. The Board made the following finding:

> "The claimant's discharge was based upon the employer's belief that she had been rude to five customers who complained to the employer. The parties to whom the claimant was allegedly rude did not testify at the hearing. The only evidence of the claimant's statements to them was the testimony of the employer. The employer's testimony is thereby hearsay and we must give greater weight to the sworn testimony of the claimant. The claimant testified repeatedly that she had not been rude to the customers and that she had not made any sort of racial comment. Based on the evidence of record we find that the claimant was discharged for reasons other than misconduct connected with her work and she is not subject to a disqualifi-

cation of benefits under Section 602 of the Act."

On March 4, 1986, the plaintiff (NSC) filed a complaint for administrative review of the Board's decision. On June 8, 1987, the circuit court entered an order reversing the Board's decision and stated as follows:

"The court in part bases its order on the finding that the Board of Review was not in a position to second guess the decision of the hearing officer on the credibility of the witnesses and that the statements made by the employer of the employee's conduct were admissible and it was improper to reverse the decision of the hearing officer and referee on the premise this was hearsay evidence."

The defendant-appellant Board of Review has prosecuted this appeal from the order of the circuit court of Will County.

The appellant (Board) raises several issues in this appeal; however, we first direct our attention to whether the trial court was correct in reversing the Board's decision on the grounds that the hearsay evidence adduced during the hearing was admissible, reliable and sufficient to support a denial of unemployment benefits.

At the outset it is to be noted that the record in this case is replete with hearsay testimony. The employers of the claimant, primarily Robert Georgantas, Jr., testified that numerous complaints were received from customers concerning rudeness of the claimant. Robert, Jr., testified as to five instances when he was contacted by customers complaining of the claimant. Three of the complaints were made over the phone and two were made in person. None of the complainants were ever identified. Robert, Jr., never inquired as to any of the complainants' names, either over the phone or from those he met in person. The witness could remember the approximate dates and could discern in a telephone conversation whether the caller was black. Counsel for the claimant, after hearing testimony as to the first three incidents, did lodge an objection as to testimony relating to the last two incidents.

The plaintiff (NSC) does not quarrel as to whether or not such testimony is hearsay. The brief of the plaintiff (NSC) admits that the claimant was denied unemployment benefits based on hearsay testimony, but asserts that hearsay evidence admitted without objection is to be considered and given its natural probative effect, and in support of this assertion cites the case of *Jackson v. Board of Review* (1984), 105 Ill. 2d 501, 475 N.E.2d 879. In *Jackson* the claimant was discharged from her employment with Commonwealth Edison for drinking intoxicating liquor while on the job. The *Jackson* case presents a

far different factual situation than that confronting us in the instant case. In *Jackson* the claimant did not deny the charge that she had been drinking on the job when she sought help from her union. One of the witnesses testifying against the claimant was a staff assistant who had been aware of the drinking problem for approximately a year and he had discussed the matter with the claimant. Unlike the case before this court, there was some nonhearsay testimony in the *Jackson* case.

We quarrel not with the defendant Board's reliance on the *Jackson* case wherein our supreme court stated:

> "In our case there were no objections to the hearsay evidence. It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect." *Jackson*, 105 Ill. 2d at 508, 475 N.E.2d at 883.

■■ ■ The evidence in this case as to complaints against the claimant was all hearsay evidence. We agree that the portion of such evidence not objected to could be considered and given its natural probative effect. There are other serious defects in the case against the claimant. At the request of the claimant, subpoenas *duces tecum* were issued prior to the hearing on review and served by private process server on both Robert Georgantas, Sr., and Robert Georgantas, Jr., to produce all books and records of whatsoever kind showing alleged acts of misconduct and other such records to support claimant's termination. No such books or records were ever produced. The hearsay testimony regarding complaints was not supported by documents, records or memoranda related to the alleged misconduct by the claimant.

The plaintiff (NSC) did place in the record a list of names of customers who allegedly complained about the claimant's conduct. Counsel for the claimant made the following motion concerning this list:

> "ATTORNEY: I would want this onto [*sic*] the record with the objection that all of those that—statements made about customers complaining—if the names are not listed on this list be stricken as hearsay and in violation of the sopoena [*sic*] of the *** "

An examination of the record discloses that there was no testimony presented by the plaintiff (NSC) relating to any of the individuals whose names appeared on the list which was submitted in response to the demands of counsel for the claimant. As to the testimony concerning the five incidents of alleged abuse by the claimant, none of the complainants were ever identified.

Hearsay testimony not objected to may be admissible; however, in

the instant case the claimant, through counsel, made repeated objections as to the hearsay testimony. The claimant was never in a position where she could benefit from cross-examination or the impeachment of the testimony given against her.

The unreliability of the testimony is further illustrated by the statements that on two occasions the claimant threw money and lottery tickets at a customer. The record establishes that the claimant, when selling lottery tickets, for security reasons was enclosed in a small, glass-enclosed, kiosk-type structure. The tickets and money were passed between the claimant and a customer through a small slot two inches high and four inches long. It was impossible for the claimant to throw or hurl any object at anyone.

The claimant also contends that her employment was terminated for reasons other than misconduct and therefore she should not be disqualified from unemployment benefits. As to this assertion, we note that Georgantas, Sr., testified as follows:

"And we wouldn't—we wouldn't have contested this but we— our rates are going so high and this—in the last year we've been contesting when employees go on unemployment. *** We're not about to be paying these high unemployment compensation rates. And that's the only reason. There is no animosity against Rose."

The foregoing testimony needs no explanation. It speaks for itself.

For the reasons set forth, the judgment of the circuit court of Will County is reversed and the decision of the Board of Review is reinstated.

Reversed.

STOUDER, P.J., and BARRY, J., concur.