DR. JOHN WARGO, JR., *et al.*, Plaintiffs-Appellees, *v.* STATE UNIVERSITIES RETIREMENT SYSTEM, Defendant-Appellant.—(THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Plaintiff-Appellee, *v.* STATE UNIVERSITIES RETIREMENT SYSTEM, Defendant-Appellant.)

Fourth District    No. 17358

Opinion filed June 7, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Kathleen M. Lien, Assistant Attorney General, of counsel), for appellant.

Billington & Billington, of Springfield, Franklin, Flynn & Palmer, of Champaign, and James J. Costello, University Counsel for the University of Illinois, of Urbana (Charles L. Palmer, of counsel), for appellees.

JUSTICE LONDRIGAN delivered the opinion of the court:

The Board of Trustees of the State Universities Retirement System (SURS) decided that the four personal plaintiffs, Wargo, Sledge, Sullivan, and Moomey, are not eligible to participate in that pension fund and ordered that their service and earnings credits be erased, that their contributions be refunded, and that no future contributions be accepted from them. Wargo, Sledge, Sullivan, Moomey, and their nominal employers, the University of Illinois and Illinois State University, sought administrative review. The circuit court reversed, holding that the Board did not have the authority to make those decisions, and ordered that the four be reinstated as participants in the fund. We affirm.

The four personal plaintiffs serve as directors of two organizations, the Illinois Association of School Administrators and the Illinois Principals Association, that have affiliated themselves with the University of Illinois and Illinois State University respectively. The directors hold positions on the university faculties. The universities pay their salaries and provide their fringe benefits; all these costs are reimbursed by the associations. The Board decided that Wargo, Sledge, Sullivan, and Moomey are not

eligible to participate in SURS because they work fulltime for their associations and their associations determine the compensation and term for each position and control the work.

Article 15 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, pars. 15—101 through 15—196) is the statutory source of the State Universities Retirement System. Illinois State University, a regency university, and the University of Illinois are employers as defined by article 15. (Ill. Rev. Stat. 1979, ch. 108½, par. 15—106.) The Board argues that Wargo, Sledge, Sullivan, and Moomey are not properly classifiable as employees because they devote all their time to association business rather than to teaching and other traditional faculty duties; the Board believes that its statutory powers include the authority to decide whether a person is an employee of an article 15 employer.

Section 15—107 (Ill. Rev. Stat. 1979, ch. 108½, par. 15—107) defines "employee" and says in part:

"'Employee': Any member of the educational, administrative, secretarial, clerical, mechanical, labor or other staff of an employer whose employment is permanent and continuous or who is employed at one-half time or more in a position in which services are expected to be rendered on a continuous basis for at least one school year, who (a) receives payment for the performance of personal services on a warrant issued pursuant to a payroll voucher certified by an employer and drawn by the State Comptroller upon the State Treasurer or by an employer upon trust, federal or other funds, or (b) is on a leave of absence without pay."

Section 15—107 goes on to list exceptions and qualifications to the quoted rule; none of them are relevant here.

Article 15 does not define "employment" or "personal services"; "service" is defined (Ill. Rev. Stat. 1979, ch. 108½, par. 15—113), but only with reference to calculating service credits and periods of employment.

Wargo, Sledge, Sullivan, and Moomey are paid their salaries by the universities. Illinois State University pays Sullivan and Moomey from a trust fund that was established by the agreement affiliating the Illinois Principals Association with that university; the University of Illinois follows the same approach, and the money is deposited by the Illinois Association of School Administrators in an account with the university. These procedures satisfy section 15—107 on the method of paying employees. The contracts between the universities and the four association directors are renewed annually; the universities send them annual notices of their appointments to the faculties; the positions are fulltime although not permanent. This satisfies the clause in section 15—107 regarding persons "employed at one-half time or more in a position in which services are expected to be rendered on a continuous basis for at least one school

year." Wargo, Sledge, Sullivan, and Moomey are therefore employees within the meaning of section 15—107.

The pension board relies on sections 15—159, 15—160, 15—163, and 15—168 (Ill. Rev. Stat. 1979, ch. 108½, pars. 15—159, 15—160, 15—163, 15—168) as granting it authority to determine who is eligible to participate in SURS. Section 15—159 simply creates a board of trustees to govern the fund. Section 15—160 grants the Board "the powers and duties stated in Sections 15—161 to 15—177, inclusive, in addition to the other powers and duties herein provided." Section 15—163 says:

> "To consider and pass on all applications for annuities and benefits; to authorize the granting of annuities and benefits; and to limit or suspend any payment or payments, all in accordance with this Article."

Section 15—168 says:

> "To require such information as shall be necessary for the proper operation of the system from any participant, beneficiary or from any officer, department head or other person or persons in authority, as the case may be, of any employer."

These sections do not address the problem here, the Board's power to decide whether a person is an employee. Section 15—163 pertains to the calculation of benefits and the disbursement of money; Wargo, Sledge, Sullivan, and Moomey, however, seek to contribute to the fund, not withdraw from it. Section 15—168 enables the Board to obtain information on salaries and periods of employment; we do not interpret it as expanding the Board's powers and duties beyond those expressly stated elsewhere in the article. Nowhere does article 15 say that the Board may decide whether a person is an employee; the general provisions in the Pension Code (Ill. Rev. Stat. 1979, ch. 108½, pars. 1—101 through 1—111, 23—101 through 23—103) are also silent on this question.

The provisions governing contributions to and participation in SURS do not support the Board's argument that it may decide who is an employee. An employer's duties are limited to supplying the Board with vouchers, in the case of persons paid by State money, or checks, in the case of persons paid from Federal or trust funds, for the necessary contributions. (Ill. Rev. Stat. 1979, ch. 108½, par. 15—181.) An employee must become a participant in SURS by the end of three years of employment; he may elect to participate when he begins his job or after his first or second year of work. (Ill. Rev. Stat. 1979, ch. 108½, par. 15—134.) Section 15—134 also says:

> "A person who becomes a participant shall continue to be a participant until the date he becomes an annuitant, dies or accepts a refund of his contributions."

None of the three methods of ceasing participation authorized the Board's

actions here. An annuitant is defined as "[a] person receiving a retirement, reversionary, survivors or beneficiary annuity from this System" (Ill. Rev. Stat. 1979, ch. 108½, par. 15—119); none of the four personal plaintiffs are annuitants. Death too is inapplicable here. Section 15—154 (Ill. Rev. Stat. 1979, ch. 108½, par. 15—154), regarding refunds, the third method of ceasing participation, says in part:

> "A participant whose status as an employee is terminated, regardless of cause, or who has been on lay off status for more than 120 days, is entitled to a refund of contributions upon application therefor if he is not on leave of absence.
> * * *
> A participant who terminates his status as an employee and elects to waive service credit under Section 15—194, shall be entitled to a refund * * *."

We construe the phrase, "whose status as an employee is terminated," to refer to action taken by the employer rather than by the Board. Thus, once a person becomes a participant in SURS the Board cannot interfere with his continued participation in the fund.

If the legislature had wanted the Board to have this power, the statutes would have expressed that. For example, article 4 of the Pension Code (Ill. Rev. Stat. 1979, ch. 108½, pars. 4—101 through 4—143), on pension funds for firemen employed by cities of 500,000 or fewer persons, contains a provision on qualifications for participation in the funds. Article 15, SURS, does not contain a similar provision. In *Gordan v. Board of Trustees* (1966), 77 Ill. App. 2d 234, 222 N.E.2d 28, the Board denied the plaintiff's application for enrollment in the fund. The plaintiff had been appointed as a fireman by the Joliet fire department and argued that enrollment in the pension fund was a ministerial act. Then as now section 4—107 said that applicants must "[b]e found upon a medical examination by a duly licensed physician selected by the Board to be then physically and mentally fit to perform the duties of a fireman." (Ill. Rev. Stat. 1979, ch. 108½, par. 4—107(b)(3).) In *Gordan* the Board denied the plaintiff's application for enrollment on the basis of a doctor's report that the plaintiff had a weak back but was otherwise fit. In upholding the Board's decision the court said:

> "The power and duty of determining whether an applicant for enrollment in the Firemen's Pension Fund is qualified for enrollment is vested in the Board of Trustees of the Fund. The language of the Act does not confer the power of determining whether such applicant is so qualified on a physician selected by the Board but that determination is left to the Board itself." 77 Ill. App. 2d 234, 238, 222 N.E.2d 28, 30.

Under article 15, however, the employers decide who their em-

ployees are, and that decision determines eligibility to participate in the pension fund; we find no provision in the Pension Code granting that power to the Board of Trustees of SURS.

Affirmed.

WEBBER and MILLS, JJ., concur.