NO. 4-10-0568    Opinion filed 2/18/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| MARY ANN ADAMS, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| THE BOARD OF TRUSTEES OF THE TEACHERS' | ) | No. 09MR848 |
| RETIREMENT SYSTEM OF THE STATE OF | ) | |
| ILLINOIS, | ) | Honorable |
|     Defendant-Appellee. | ) | Patrick J. Londrigan, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Steigmann and McCullough concurred in the judgment and opinion.

**OPINION**

In October 2009, defendant, the Board of Trustees of the Teachers' Retirement System of the State of Illinois (Board), found monies paid to plaintiff, Mary Ann Adams, while engaged in an illegal kickback scheme did not constitute salary for pension purposes.  On appeal, the circuit court of Sangamon County affirmed the Board's judgment.

Adams appeals, arguing her pension benefits should not be reduced by the amount of monies paid to her while she participated in an illegal kickback scheme.  We affirm.

I. BACKGROUND

Between 1991 and 2005, Adams worked as the director of Project E.C.H.O., an alternative high school established and operated by the Franklin-Williamson Regional Office of Education. Between September 1999 and August 2004, Barry Kohl was regional

superintendent of schools and Adams' supervisor. In the summer of 1999, Adams sought to expand Project E.C.H.O., providing services to a juvenile detention center to be built in Franklin County. Adams earned between $50,000 and $55,000 per year. She asked Kohl for a raise "because of the [j]uvenile [d]etention [c]enter work." According to Adams, Kohl refused.

Later, Kohl agreed to Adams' request for a pay raise, on condition she pay to Kohl one-half of the net proceeds of her pay raise on a monthly basis. Between September 15, 1999, and June 15, 2004, Adams received the salary she had previously been paid for her employment at the regional office in the form of two checks each month, together with the pay raise she requested and received from Kohl in the form of two additional checks each month. Between September 15, 1999, and June 15, 2004, Adams cashed one of the two paychecks she received as a raise and then delivered the proceeds of the cashed check to Kohl.

Between September 15, 1999, and June 15, 2004, Judy Davis was the assistant director of Project E.C.H.O. In approximately 2002 or 2003, Adams spoke with Kohl about Davis' need for additional money. Kohl responded by asking Adams to talk with Davis about an arrangement similar to the kickback arrangement with Adams. Adams spoke to Davis about Kohl's proposal and Davis agreed. Davis made monthly payments to Kohl on the thirtieth day of each month by placing the cashed proceeds of one of the two paychecks she received as a raise beneath the blotter of her desk at the Project E.C.H.O. headquarters in

Johnston City, Illinois.  Adams stopped making monthly kickback payments to Kohl in June 2004, when she became aware of an investigation of Kohl into the misappropriation of regional office funds.

Between September 1999 and June 2004, Adams never reported to law-enforcement personnel her payments to Kohl. Adams understood she was a public employee of the regional office and the salaried compensation she received for her public employment was funded by and with public monies.  Adams claimed she was given additional duties on or before the time she asked for a pay raise.  The Board had no evidence Adams did not perform additional duties for the pay raises she received in any year. Adams retired in May 2005.

In July 2008, Adams received a letter from an employer-services auditor employed by the retirement system.  The letter follows, in pertinent part:

"The Illinois Teachers' Retirement System reviewed earnings reported for you[] by the Franklin-Williamson Counties ROE.

During the period 1999-00 through 2003-04, your creditable earnings reported by the Franklin-Williamson Counties ROE appear to be overstated.  Mr. Barry Kohl issued you a supplemental salary contract in return for you paying half of the additional salary to him.  The entire supplemental salary contract

- 3 -

was included in your reported annual salary rate and creditable earning each fiscal year.

The reporting of TRS member compensation is governed by [section 1650.450 of Title 80 of the Illinois Administrative Code (Administrative Code) (80 Ill. Adm. Code 1650.450, as amended by 27 Ill. Reg. 1668, 1676-79 (eff. Jan. 17, 2003)),] which defines 'salary' as 'any emolument of value recognized by the System that is received *** by a member in consideration for services rendered as a teacher ***.'  Agreements, written or verbal, to return a sum of money to the individual authorizing a salary payment lacks consideration.  Lacking consideration, the amount of money that is subject to the agreement does not qualify as salary under TRS' salary rule."

In December 2008, Adams sought administrative review ("solely upon the record agreed to by the parties") of the July 2008 staff decision to reduce her retirement benefits.

The claims-hearing committee recommended upholding the staff decision to disallow the following amounts as creditable earnings to Adams: $24,175.82 for the school years 1999-2000, 2000-01, 2001-02, and 2002-03, and $26,813.19 for the school year 2003-04.  The committees's written recommendation found "but for

kickbacks to Kohl, Adams would not have received the salary raise and enhanced pension benefits."

In October 2009, the Board voted to adopt the committee's recommended decision. In June 2010, the circuit court affirmed the Board's decision.

This appeal followed.

## II. ANALYSIS

Adams argues she can be denied benefits only if she (1) is convicted of a felony or (2) provided no consideration for the additional compensation she received. We disagree.

In an appeal from an administrative agency's decision, this court reviews the agency's determination, not the circuit court's. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531, 870 N.E.2d 273, 292 (2006). In all administrative proceedings, the plaintiff bears the burden of proof. *Marconi*, 225 Ill. 2d at 532-33, 870 N.E.2d at 293. Based upon the question presented, this court reviews agency determinations under three distinct standards of review. The agency's interpretation of a statute or administrative rule is a question of law, which receives *de novo* review. *Marconi*, 225 Ill. 2d at 532, 870 N.E.2d at 293. The agency's factual determinations will be upheld unless they are against the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 465, 917 N.E.2d 999, 1011 (2009). A finding is against the manifest weight of the evidence where the opposite

conclusion is clearly apparent. *Peacock v. Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 652, 918 N.E.2d 243, 250 (2009). Finally, this court reviews mixed questions of fact and law under the clearly erroneous standard. See *McKee v. Board of Trustees of the Champaign Police Pension Fund*, 367 Ill. App. 3d 538, 543, 855 N.E.2d 571, 575 (2006).

An administrative agency's decision is clearly erroneous where the reviewing court comes to the definite and firm conclusion the agency has committed an error. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211, 886 N.E.2d 1011, 1018 (2008). The clearly erroneous standard provides some deference based upon the agency's experience and expertise, falling between *de novo* and manifest-weight-of-the-evidence review. *McKee*, 367 Ill. App. 3d at 543, 855 N.E.2d at 575.

The retirement system was created to provide retirement annuities and other retirement benefits for teachers. 40 ILCS 5/16-101 (West 2004). To determine the proper annuity for a retiring teacher, retirement system staff must determine a member's final average salary. See 40 ILCS 5/16-133(a)(B) (West 2004). "Final average salary" is defined as the average of the highest four consecutive years of salary within the last 10 years of creditable service, subject to the rules of the Board. 40 ILCS 5/16-133(b) (West 2004). "Salary" is defined as the "actual compensation received by a teacher during any school year *and recognized by the [retirement] system in accordance with rules of*

*the [B]oard*." (Emphases added.) 40 ILCS 5/16-121 (West 2004). Section 1650.450(a) of Title 80 of the Administrative Code defines "salary" more specifically as "[a]ny emolument of value *recognized by the [s]ystem* that is received, actually or constructively, by a member *in consideration for services rendered as a teacher*." (Emphases added.) 80 Ill. Adm. Code 1650.450(a), as amended by 27 Ill. Reg. 1668, 1676-77 (eff. Jan. 17, 2003).

We need not address Adams' initial argument she can be denied benefits only if she is convicted of a felony. The Board did not seek to terminate Adams' retirement benefits alleging a felony conviction relating to her service as a teacher. There is no relevant felony forfeiture statute applicable to these facts. "[The Board] has never asserted that this applies in the case at bar and it has never claimed that Adams' entire pension is subject to forfeiture."

Adams next argues the kickback money she paid Kohl was "salary" as defined by the Administrative Code. Specifically, she argues the kickback money was additional compensation earned for the performance of extra duties.

Before the Board, Adams alleged she had increased duties "[b]ecause of the [j]uvenile [d]etention [c]enter work," but the record does not show precisely what those duties were. Adams references as "evidence" a four-page document she prepared at the request of an investigator for the Illinois Attorney General's office between 2001 and 2003, and detailing her duties

and associated compensation. The referenced document was not included as a part of the record agreed to by the parties before the Board, and is not a part of the record on appeal. Further, Adams admits she did not report to the investigator the details of the illegal kickback scheme. It is not the Board's burden to establish Adams did not perform additional duties for the pay raises she received in any year. The plaintiff bears the burden of proof. See *Marconi*, 225 Ill. 2d at 532-33, 870 N.E.2d at 293.

Further, Adams stipulated as follows: "Kohl agreed to Adams' request for a pay raise, on condition that she paid to him one-half of the net (i.e. after taxes) proceeds on a monthly basis." The monies paid Adams while engaged in an illegal kickback scheme were not in consideration of services rendered as a teacher. Kohl denied Adams' request for a raise. Adams would not have been paid the monies if she did not agree to kickback to Kohl one-half of the net proceeds on a monthly basis. The monies paid were in consideration of Adams cooperation and participation in an illegal kickback scheme and did not constitute salary for pension purposes. Based upon this record, the Board's conclusion "but for her kickbacks to Kohl, Adams would not have received the salary raise and enhanced pension benefits" was not clearly incorrect.

Adams next argues because the Board did not find Adams' earnings overstated during her final months of employment where Adams did not participate in an illegal kickback scheme, the Board's "conduct in this respect is tantamount to an admission

that *** Adams gave adequate consideration for the additional duties she performed."  We have already determined the monies paid were in consideration of Adams cooperation and participation in an illegal kickback scheme, and not additional compensation earned for the performance of extra duties.  Adams stopped making monthly kickback payments to Kohl in June 2004 and retired in May 2005.  The Board found monies paid to Adams "subject to the agreement [did] not qualify as salary under [the Administrative Code]."  The Board apparently concluded the monies paid to Adams during her final months of employment and *after* she terminated her participation in the illegal kickback scheme were not "subject to the agreement," and did qualify as salary.

III. CONCLUSION

For the reasons stated, we affirm the circuit court's affirmance of the Board's determination.

Affirmed.