# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231**

| | |
|---|---|
| Appellate Court Caption | GWENDOLYN R. BUCKNER, Plaintiff-Appellant, v. THE UNIVERSITY PARK POLICE PENSION FUND, THE BOARD OF TRUSTEES OF THE UNIVERSITY PARK POLICE PENSION FUND, THE MEMBERS OF THE BOARD OF TRUSTEES OF THE UNIVERSITY PARK POLICE PENSION FUND MARY DISTLER, GORDON SMITH, DANIEL MURPHY, and THE VILLAGE OF UNIVERSITY PARK, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0231 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | December 21, 2012<br><br>February 1, 2013<br>February 1, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff police officer's application for an on-duty disability pension and the award of a not-on-duty disability pension arising from the back injury plaintiff suffered in an automobile accident while driving home from work were affirmed, since the disability was not suffered while performing an act of duty, the back injury suffered several years earlier was not a causative factor, and plaintiff forfeited her claim that she was denied due process because the pension board lacked two members at the time of the hearing on her application. |

| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-MR-1183; the Hon. Barbara Petrungaro, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas W. Duda (argued), of Law Offices of Thomas W. Duda, of Arlington Heights, for appellant. |
| | Charles H. Atwell, Jr. (argued), of Atwell & Atwell, of Aurora, for appellee University Park Police Pension Fund. |
| | Timothy E. Guare and Robert E. Swain (argued), both of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP, of Arlington Heights, for appellee Village of University Park. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Justices Holdridge and Lytton concurred in the judgment and opinion. |

## OPINION

¶ 1      Plaintiff Gwendolyn Buckner brought this complaint for administrative review after the trial court affirmed the decision of defendants University Park Police Pension Fund; the Board of Trustees of the University Park Police Pension Fund; Mary Distler, Gordon Smith, and Daniel Murphy, the members of the Board of Trustees of the University Park Police Pension Fund; and the Village of University Park, denying her an on-duty disability pension and awarding her a not-on-duty disability pension. The trial court affirmed the Board's determination. She appealed. We affirm.

¶ 2                                    FACTS

¶ 3      Plaintiff Gwendolyn Buckner was hired as a police officer by defendant Village of University Park in October 1990. She became vested for benefits during her employment, including disability pension benefits from defendant University Park Police Pension Fund, which was administered by defendants Board of Trustees of the University Park Police Pension Fund (the Board) and its individual members, Mary Distler, Gordon Smith, and

Daniel Murphy. In April 2001, Buckner suffered an injury to her back when she fell down stairs while evacuating a burning apartment building. She underwent lumbar fusion surgery, returning to duty in March 2002 in the investigations department. Shortly after her return, Buckner was assigned to the Cooperative Police Assistance Team (CPAT), a multi-jurisdictional special task force under the Illinois State Police (ISP) engaged in long-term, complex conspiracy investigations. In approximately May 2005, she returned to the investigations department at University Park. On April 28, 2006, Buckner sustained back injuries in an automobile accident that occurred when she was driving home after her shift had ended. She underwent a second back surgery in February 2007, after which her treating surgeon documented she was unable to physically perform her job as a police officer. In February 2008, Buckner filed an application for an on-duty disability pension.

¶ 4     An administrative hearing before the Board began in August 2009. Prior to the presentation of evidence, Buckner orally amended her application to include an alternative request for a not-on-duty disability pension. Buckner was also informed by the Board that three votes were required to confer disability benefits per the Open Meetings Act (5 ILCS 120/1.02 (West 2006)), and that because the Board at that time consisted of only three members, any decision in Buckner's favor would have to be unanimous.

¶ 5     Buckner testified. After her 2001 injury and return to work in 2002, she could not work as a patrol officer and was assigned to investigations. At that time, she had permanent restrictions of a 25-pound weight limit and a 1-hour duty vest limit. She brought her medical paperwork with her when she returned to work in March 2002 and her superiors at University Park and CPAT were aware of her restrictions. She performed full duty between March 2002 and April 2006, although her positions in investigations did not require her to exceed her medical restrictions. When the April 2006 accident occurred, she was driving home in a department-issued, unmarked squad car after her shift ended. She was provided the unmarked car because she was on call at all times. She was not responding to a police call when the accident took place.

¶ 6     Various exhibits were admitted into evidence, including Buckner's medical records which established that her recovery from the 2001 accident and surgery included return to work authorizations both with and without restrictions. Her surgeon stated her medical/work history as follows. From June 16, 2001 to March 7, 2002, Buckner could not work. Between March 7, 2002 and December 17, 2002, Buckner was released for work with restrictions: no lifting, pushing or pulling over 25 pounds and the ability to change positions as needed. An August 2002 office note indicated Buckner's 25-pound weight restriction was permanent. On December 17, 2002, Buckner was released with no restrictions. On December 11, 2003, Buckner was released with a permanent restriction that she could not wear a duty belt and a protective vest for "more than one hour together." In a December 2003 office note, her surgeon noted that Buckner was working full duty.

¶ 7     The opinions of three independent medical doctors who assessed her disability request per the Board's requirements were also admitted. William Malik, M.D., expressed that Buckner had "two significant injuries that occurred that accelerated" an "underlying degenerative lumbar disc disease" and made it symptomatic, identifying the 2001 and 2006 injuries. Thomas Gleason, M.D., opined that Buckner was disabled as a result of injuries

sustained in the 2006 accident. Both Malik and Gleason certified Buckner as disabled. Charles Mercier, M.D., considered that Buckner was not disabled and could return to full-time unrestricted duty.

¶ 8    The hearing was continued to March 29, 2010. At that time, the Board again indicated that the three trustees present constituted a quorum. Detective Gary Reichenberger of the Will County sheriff's department investigations and former director of CPAT testified that he was not aware that Buckner had any medical restrictions and she would not have been a part of CPAT if she had medical restrictions. Village of University Park deputy police chief Gregory Box testified that as Buckner's supervisor, he would have been aware of any restrictions. However, he did not learn that Buckner had restrictions until shortly before her April 2006 accident when another patrol officer informed him that Buckner refused to work an overtime assignment because it would exceed her duty vest restriction. Buckner was asked to provide documentation of the restriction but failed to do so. There were no light duty assignments in the department.

¶ 9    The hearing was continued and concluded with deliberations on April 30, 2010. The Board issued its finding in October 2010, denying Buckner's request for an on-duty disability pension but awarding her a not-on-duty disability pension. The Board found that she established a disability but did not establish that the disability resulted from or was aggravated by the performance of an act of duty. Buckner filed a complaint for administrative review with the trial court, which affirmed the Board's decision. Buckner appealed.

¶ 10                                         ANALYSIS
¶ 11   On appeal, Buckner argues that the Board erred in denying her an on-duty disability pension and that the Board's proceedings denied her due process.

¶ 12   The first issue is whether the Pension Board erred when it denied Buckner an on-duty disability pension. Buckner advances two arguments that the Board erred in denying her on-duty disability pension request. First, she argues that the Board improperly found her 2006 injury was not incurred in the performance of an act of duty. Second, Buckner argues that the Board erred when it determined that her 2001 on-duty injury did not contribute to her disability.

¶ 13   When reviewing administrative findings, this court looks at the decision of the administrative agency, not the determination of the trial court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Under the Administrative Review Law, all questions of fact and law presented by the entire record are considered by the reviewing court. 735 ILCS 5/3-110 (West 2006); *Wade*, 226 Ill. 2d at 504. The plaintiff bears the burden of proof in an administrative review action. *Roszak v. Kankakee Firefighters' Pension Board*, 376 Ill. App. 3d 130, 138 (2007). In administrative review cases, this court reviews factual question under the manifest weight standard, questions of law *de novo*, and mixed questions of law and fact under the clearly erroneous standard. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*).

¶ 14   Section 3-114.1 of the Illinois Pension Code provides for a disability pension of 65% of the officer's salary when the officer is disabled as a result of an "injury incurred in or

resulting from the performance of an act of duty." 40 ILCS 5/3-114.1(a) (West 2006). Under section 3-114.1, an officer is on duty while on an approved assignment. 40 ILCS 5/3-114.1(a) (West 2006). Section 3-114.2 of the Illinois Pension Code provides for a disability pension of 50% of the officer's salary when the officer "becomes disabled as a result of any cause other than the performance of an act of duty." 40 ILCS 5/3-114.2 (West 2006). An act of duty is " '[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman.' " *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 72 (quoting 40 ILCS 5/5-113 (West 2006)). See *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 540 (1997) (definition of "act of duty" under article V of Pension Code applicable to article III). The special risk requirement is not limited to only " 'inherently dangerous' activities." *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521 (1986).

¶ 15        An officer who is injured when on duty does not qualify for an on-duty disability merely because she was on duty. *Rose*, 2011 IL App (1st) 102157, ¶ 71. The critical inquiry is the capacity in which the officer was acting at the time she was injured. *Johnson*, 114 Ill. 2d at 522. To establish eligibility for an on-duty disability pension, an officer need not prove the on-duty injury was the sole or primary cause of her disability; it must be a causative factor. *Rose*, 2011 IL App (1st) 102157, ¶ 92 (quoting *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002)).

¶ 16        In support of her argument that she was injured in the performance of an act of duty, Buckner relies on *Jones v. Board of Trustees of the Police Pension Fund*, 384 Ill. App. 3d 1064, 1074 (2008), where the reviewing court determined that an award of an on-duty pension was proper because the disabled officer, injured in a car accident, was injured while on patrol, a duty which entailed a special risk not shared by the general public. See also *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 601 (2004) (reviewing court found that bicycle patrol officer was entitled to on-duty pension because injury resulted from his performance of patrol duties, which entailed a special risk). Both *Jones* and *Alm* are distinguished from the instant case. The officers in both those cases were on patrol when they were injured. In contrast here, Buckner was not on patrol when the accident occurred.

¶ 17        The facts here are more aligned with *Fedorski v. Board of Trustees of the Aurora Police Pension Fund*, 375 Ill. App. 3d 371 (2007). In *Fedorski*, the plaintiff, an officer serving as an evidence technician who had just completed taking pictures of suspects, was injured while riding as a passenger on route to drop off the camera. *Fedorski*, 375 Ill. App. 3d at 372. The officer planned to return to the police station to complete administrative work. *Fedorski*, 375 Ill. App. 3d at 372. The reviewing court considered that at the time of the accident, the plaintiff was not performing an act of duty involving a special risk. *Fedorski*, 375 Ill. App. 3d at 376. Here, Buckner was driving home after her shift had ended. Although she was in her police-issued unmarked squad car, she was not responding to a police call or emergency situation. She was engaged in an act that ordinary citizens perform and not acting in a capacity that involved special risks. Even if Buckner was on "24-hour" call, like the plaintiff in *Fedorski*, she was not injured while on patrol or while performing any police duties involving special risks. The Board's reliance on *Fedorski* was appropriate, and as that case

instructs, the Board's determination that Buckner did not satisfy the act-of-duty requirement for an on-duty disability pension was supported by the evidence. The Board's decision to deny Buckner an on-duty disability pension was not clearly erroneous.

¶ 18 Moreover, the Board did not err in rejecting Buckner's assertion that her 2001 on-duty injury was a causative factor in her 2006 injury. The evidence, which is in conflict, suggests that Buckner returned to full duty in March 2002. She claims that she had permanent restrictions at that time, including a 25-pound weight limit and a 4-hour duty vest limit, and that her superiors were aware of the restrictions. However, in her complaint, Buckner alleged that she "returned to full duty employment" in March 2002 after her first surgery. Buckner argues that she was assigned to investigations and CPAT to accommodate her light duty needs. Her Village of University Park police supervisor testified that he did not know of any restrictions until shortly before Buckner's 2006 accident when he was informed by another officer. At that time, Buckner failed to respond to a request to document her restrictions. Similarly, Buckner's CPAT supervisor testified he was not aware Buckner had any restrictions and she would not have been eligible for the position with restrictions. We note that Buckner's medical records establish that her treating physician did authorize a 25-pound weight restriction in August 2002 and limited her use of a duty vest and gun belt together to one hour in December 2003. However, it appears that information was never provided to the Village police department or CPAT.

¶ 19 Three Board-authorized physicians examined Buckner's medical records in order to certify her disability. Their reports were submitted into evidence. Two of the doctors found her to be disabled; one concluded her 2001 and 2006 injuries "accelerated" an "underlying degenerative lumbar disc disease" and the other concluded Buckner's disability resulted from the 2006 accident. The third doctor released her for full duty and certificated that she was not disabled. We consider the Board's finding that Buckner's 2001 injury was not a causative factor in her disabling 2006 accident was not against the manifest weight of the evidence. The Board made factual findings that she returned to full employment at that time and that there was no evidence to support that she had work restrictions or that her 2001 injury aggravated the subsequent injury and contributed to her disability. The Board found the testimony of Box and Reichenberger that she returned to work after the 2001 injury without restrictions more credible than her claims that she was assigned to light duty in investigations to accommodate those restrictions. The Board's determinations were not against the manifest weight of the evidence. Accordingly, because Buckner's disability was not caused by an injury sustained while she was performing an act of duty and her 2001 injury was not a causative factor in the injury, we find that the Board did not err in denying Buckner's request for an on-duty disability pension.

¶ 20 The second issue for our consideration is whether Buckner was denied due process by the Board's proceedings. Buckner argues that the Board lacked two of its required five members and that the allegedly inadequate composition of the Board violated her due process rights by requiring that a vote in her favor be unanimous. According to Buckner, if the Board had had its statutory five members, it would not have been necessary for her to persuade all the Board members to her position.

¶ 21 The requirements of due process apply to administrative proceedings, which must be

conducted by a fair and impartial tribunal. *O'Callaghan v. Retirement Board of Firemen's Annuity & Benefit Fund*, 302 Ill. App. 3d 579, 586 (1998). Under the Open Meetings Act, three members of a five-member board constitute a quorum and three votes are necessary to take action. 5 ILCS 120/1.02 (West 2006). Whether a pension applicant's due process rights were violated is a question of law this court reviews *de novo*. *Girot v. Keith*, 212 Ill. 2d 372, 379 (2004) (quoting *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004)).

¶ 22       Buckner has forfeited this issue by failing to challenge the makeup of the Board at the hearing. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002) ("[I]ssues *** not raised before the administrative agency will not be considered for the first time on administrative review."). At the first hearing, the Board specifically informed Buckner it consisted of only three members; two positions on the Board were unfilled. Buckner did not object. Before the second hearing began, the Board again stated it was comprised of only three members. Again, Buckner did not object. Moreover, she failed to file a complaint under the Open Meetings Act challenging the makeup of the Board. 5 ILCS 120/3(a) (West 2006) (complaint alleging violation of the Open Meetings Act to be filed with 60 days of violation). Forfeiture notwithstanding, we find Buckner was not denied due process in the administrative hearing. A quorum of the Board was necessary to deny or approve Buckner's request for a disability pension. The quorum of three board members was present and they voted to deny Buckner an on-duty disability pension and grant her a not-on-duty disability pension.

¶ 23       For the following reasons, the judgment of the circuit court of Will County is affirmed.

¶ 24       Affirmed.