# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Slocum v. Board of Trustees of the State Universities Retirement System*,
2013 IL App (4th) 130182**

---

| | |
|---|---|
| Appellate Court Caption | PATRICIA SLOCUM and PATRICIA PUCCIO, Plaintiffs-Appellants, v. THE BOARD OF TRUSTEES OF THE STATE UNIVERSITIES RETIREMENT SYSTEM; THE EXECUTIVE COMMITTEE OF THE STATE UNIVERSITIES RETIREMENT SYSTEM; THE CLAIMS PANEL OF THE STATE UNIVERSITIES RETIREMENT SYSTEM; DANIEL GAUMER, Hearing Officer; WILLIAM E. MABE, Executive Director; CARRIE HIGHTMAN, Trustee; MATTHEW BERNS, Trustee; JOHN ENGSTROM, Trustee; DORINDA MILLER, Trustee; ANTONIO VASQUEZ, Trustee; and MITCHELL VOGEL, Trustee, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0182 |
| Filed | December 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The final decision of the executive committee of the Board of Trustees of the State Universities Retirement System denying plaintiffs' requests to purchase service credit pursuant to the Pension Code was upheld on administrative review, since plaintiffs' bare allegations and unsupported conclusions were insufficient to establish a *prima facie* case that they were treated differently than similarly situated individuals and that an equal-protection violation occurred. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 12-MR-525; the Hon. Thomas J. Difanis, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Paul R. Klenck (argued), of Illinois Education Association, of Chicago, for appellants. |
| | Albert J. Lee (argued), of State Universities Retirement System, of Champaign, for appellees. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justice Knecht concurred in the judgment and opinion. Presiding Justice Appleton dissented, with opinion. |

**OPINION**

¶ 1      In July 2012, plaintiffs, Patricia Slocum and Patricia Puccio, filed a complaint for administrative review of a final decision of the executive committee of the Board of Trustees of the State Universities Retirement System (SURS or the Board) denying their requests to purchase service credit under the Illinois Pension Code (Pension Code) (40 ILCS 5/1-101 through 24-109 (West 2012)). In January 2013, the circuit court found the final administrative decision was not against the manifest weight of the evidence and denied plaintiffs' request for administrative review.

¶ 2      On appeal, plaintiffs argue the decision by SURS to deny their requests for service credit was clearly erroneous and a denial of equal protection. We affirm.

¶ 3                       I. BACKGROUND

¶ 4      The College of Du Page (College), a community college in Du Page County, was a participating employer in SURS at all times relevant to this case. Slocum was employed as a part-time adjunct professor at the College from the fall of 1982 until becoming a full-time professor in September 1988. Puccio was employed at the College as a part-time adjunct professor from 1980 until becoming a full-time professor in the fall of 1989. Slocum retired in 2008 and Puccio retired in 2009.

¶ 5      Prior to plaintiffs' employment with the College, the College had implemented personnel policy 4456. During the 1980s, policy 4456 provided "[a]ll part-time assignments for individuals who are otherwise not gainfully employed will not exceed two-thirds[ ] of a normal teaching load." "Teaching load" referred to the number of credit hours taught in a given quarter. Full-time teaching loads in plaintiffs' departments were 15 credit hours per

quarter. A part-time teaching load could not exceed 10 hours, or two-thirds of 15 hours. If a department wanted a part-time professor to teach more than two-thirds of a normal teaching load, the scheduler had to get special permission from the appropriate provost. Both plaintiffs, as part-time professors, were told by deans that they could not be assigned more than 10 credit hours. In one quarter, when a full-time faculty member was injured in a car accident, the provost, consistent with the requirement of policy 4456, gave permission for Puccio to work full-time for that quarter.

¶ 6        At some point in time, the College's director of human resources, Howard Owens, created his own formula for calculating part-time work. Rather than calculating workload percentages solely using the number of credit hours per quarter divided by a full-time credit hour load, Owens based his formula on the assumption that a full-time professor had a 40-hour workweek that included teaching, preparing and grading lessons, maintaining office hours, and working on committee assignments. Owens assumed part-time professors did not have office hours or committee assignments as did full-time professors, and that those duties constituted 15 hours of a full-time faculty member's workweek. Owens believed the actual teaching load accounted for 25/40 or 62.5% of a full-time professor's 40-hour workweek. Thus, when calculating a part-time adjunct's workload, the Owens formula discounted the teaching load formula by multiplying .625, because, in his opinion, full-time faculty worked a 40-hour week and part-time faculty did not have office hours or perform committee work.

¶ 7        During testimony, plaintiffs stated they maintained office hours when they were part-time, adjunct faculty members. Puccio worked on a committee while an adjunct professor. Slocum met with students outside teaching hours either in the classroom or in the part-time faculty center. She also attended advisory workshops.

¶ 8        While plaintiffs were part-time employees, they were not eligible to participate in SURS. After they became full-time employees, plaintiffs participated in SURS, earned service credit, and made contributions to SURS. In the late 1990s, plaintiffs applied to purchase SURS service credit for the adjunct work they performed in the 1980s before they were SURS participants. Under the Pension Code, SURS participants can purchase service credit for prior work performed when the employee "was employed at least one-half time for an employer preceding the date of becoming a participant." 40 ILCS 5/15-113.1(c) (West 2012). When plaintiffs made their application in the late 1990s, the College used the Owens formula to calculate part-time work and used this formula when reporting to SURS. Thus, the College took the credit hours plaintiffs worked each quarter in the 1980s and multiplied that by a factor of .625. Under the Owens formula, plaintiffs were able to purchase service credit for some quarters.

¶ 9        In 2006, a full-time faculty member filed a grievance with the College's faculty administrative review board (review board), complaining that the College violated policy 4456 by improperly assigning too much work to part-time faculty. Since the Owens formula discounted part-time work by a factor of .625 and policy 4456 limited part-time work to two-thirds of a teaching load, adjunct professors could be assigned more credit hours than if assignments were made using the teaching load formula. In response, the review board issued a recommendation that all College administrators should only use credit hours to calculate part-time employees' workload percentage, rather than using the Owens formula, which

discounted adjuncts' workload because it assumed they did not perform committee work and office hours. In 2008, the College president adopted the review board recommendation, and the College abandoned the Owens formula and reverted to the teaching load formula consistent with policy 4456.

¶ 10 In 2007, after the review board recommendation, plaintiffs attempted to purchase service credit with SURS for some of the adjunct work they performed in the 1980s. Claire Benz, a compensation specialist with the College, told Puccio she was eligible to purchase credit for certain quarters. The College reported to SURS that Slocum and Puccio had worked certain quarters in the 1980s at least half-time or more.

¶ 11 At approximately the same time, three other College employees, Sue Censky, Joyce Abel, and Nancy Conradt, allegedly purchased service credit for part-time work performed in the 1980s. After Abel's request to purchase service credit was approved, Puccio submitted her request. The College allegedly calculated plaintiffs' time using the teaching load formula.

¶ 12 After receiving plaintiffs' reports, SURS director of member services Angela Lieb initiated a review of the College's report of plaintiffs' service credit. SURS asked the College why it was reporting that plaintiffs worked half-time or more in certain quarters in the 1980s, when it had not reported those quarters in the late 1990s when plaintiffs previously applied to purchase service credit. Julie Boyce, at human resources for the College, indicated the discrepancy was due to a change in the College's formula effective in April 2007. After Lieb's inquiry, the College revised the report to SURS and reverted to using the Owens formula for plaintiffs. Based on the College's second report, SURS denied plaintiffs' requests to purchase additional service credit.

¶ 13 In 2008, plaintiffs petitioned SURS for an administrative hearing. In her petition, Puccio argued SURS erred in denying her request to purchase service credit by requiring the percentage of employment be determined by the formula in place at the time the service was rendered. Puccio alleged the College used "an erroneous, illegal formula" in reporting service credit to SURS and the formula "was inconsistent with administrative practice which limited part-time faculty to an annual teaching load no greater than two-thirds of a full-time faculty member's academic year load in accordance with Board policy." Puccio claimed an internal review board at the College found the old formula violated labor practices and did not reflect the actual work performed by faculty. A corrected formula was adopted, and SURS accepted the new formula retroactively for other individuals.

¶ 14 In December 2008, the SURS claims committee recommended that the executive committee remand the case to staff with directions to seek "further evidence to prove factually what methodology was employed" by the College in the 1980s when reporting to SURS "which of its employees performed at least half-time work for the periods in question."

¶ 15 Following remand, the only additional evidence SURS gathered was an email from Sue Censky of the College. SURS employer representative Larry Curtis emailed Censky asking if the Owens formula was the formula the College used in the 1980s to calculate half-time work. Censky stated the Owens formula was used during the 1980s. When Curtis mentioned the claimant said the College's policy in the 1980s was reflected only in policy 4456, Censky

indicated that was inaccurate as the policy did not deal with percentage of time worked for SURS reporting but dealt with how many hours a part-time faculty member was allowed to teach. Censky stated a new formula was employed in late May 2007.

¶ 16 In June 2010, Puccio's representative wrote to Karen Maggio at SURS stating no foundation was provided regarding Censky's knowledge of the formulas the College used, the Owens formula did not exist in the 1980s, and Censky herself was allowed by SURS to purchase service credit for part-time work in the 1980s without using the Owens formula.

¶ 17 In September 2010, SURS denied plaintiffs' request to purchase service credit, stating, in part, as follows:

"As previously stated, employers must base the percent time calculation for any prior service periods upon the formula that was in effect at the time such service was performed. Sue Censky of the College of Du Page confirmed that the formula referred to as the Owen's [*sic*] Formula was the formula in effect during the period of time you have requested to purchase as prior service credit.

The last verification that SURS received was based upon the Owen's [*sic*] Formula. As a result, we have concluded that you are not eligible to purchase any additional prior service credit for your employment with the College of Du Page."

¶ 18 In October 2010, plaintiffs appealed this determination to the deputy director of members services at SURS. Plaintiffs objected to Censky's belief that the Owens formula was utilized by the College in the 1980s, arguing she provided no foundation for her opinion. In February 2011, the director of member services denied the appeal, concluding plaintiffs had "purchased all of the eligible prior service credit that has been verified with our system."

¶ 19 In June 2011, each plaintiff filed a statement of claim, requesting to purchase service credit. Each plaintiff argued she "should be permitted to purchase service credit for the nine quarters because under the only applicable [College] policy during the time she performed the work, she was employed at least one-half time. Additionally, by permitting other similarly situated [College] employees to purchase service credit, while denying her the same opportunity, SURS is violating her right to Equal Protection under the Constitution."

¶ 20 In February 2012, the SURS claims panel denied plaintiffs' appeal. The panel noted the issue centered on whether plaintiffs were entitled to purchase past service credit under section 15-113.1(c) of the Pension Code for periods of time "during which a person was employed at least one-half time for an employer preceding the date of becoming a participant." In its decision, the claims panel relied on the email provided by Censky, stating as follows:

"In her e-mail response to SURS, Sue Censky went on to indicate that the College of Du Page policy for calculating percentage of full time employment was reflected in the original (Owens') [*sic*] formula which excluded office hours and committee work when determining the percentage of full time employment worked by part time faculty members. According to Sue Censky, the College employed that original formula until April 30, 2007. Under that formula, the claimant would *not* be entitled to purchase service credit for any of the periods of time in question because her work during each of those periods would fall below half time employment." (Emphasis in original.)

The panel noted whether a member has worked at least half-time or more is a determination left to the employer, since "[t]he percentage of time employed shall be as reported by the employer." 40 ILCS 5/15-134.1(b) (West 2012).

"Under [section 15-134.1(b)], SURS is required to defer to College of Du Page in terms of determining what they consider to be the percentage of time that the claimant was employed during a given period. In this case, Sue Censky of the College of Du Page has indicated that College of Du Page used the methodology reflected in the original Owens' [*sic*] formula as its policy prior to 2007. We accept that evidence and find that College of Du Page Board Policy 4456 (dealing with the number of credit hours that part time faculty may teach) does not overcome nor even contradict Sue Censky's statements of what constituted College of Du Page policy regarding how to calculate the percentage of full time employment in the 1980s."

In June 2012, the SURS executive committee adopted the claims panel's decision.

¶ 21    In July 2012, plaintiffs filed a complaint for administrative review. Plaintiffs argued they had been adversely affected by the executive committee's decisions by not being permitted to purchase service credit for those quarters in which they were employed for more than one-half time. They sought judicial review of those decisions, which they claimed were clearly erroneous and a violation of their right to equal protection.

¶ 22    In November 2012, defendants filed a brief in opposition to plaintiffs' complaint for administrative review. Defendants claimed that in April 2007, after the full-time faculty grievance, then-College President Sunil Chand directed human resources to prospectively change its reporting of percentage times to SURS. Defendants claimed Benz retroactively revised the percentage times for prior service periods that previously had been reported as being below 50% and reported the revised figures to SURS for plaintiffs in May 2007. After plaintiffs proceeded to apply for the purchase of prior service based on the revised figures, SURS engaged in email discussions with the College regarding discrepancies between the new figures and those that had been reported in the late 1990s. Following the inquiry, the College sent hand-corrected reports that reverted to the original percentage time for each plaintiff. SURS then denied plaintiffs' applications.

¶ 23    In January 2013, the circuit court conducted a hearing on the complaint. In February 2013, the court issued its written order, finding as follows:

"1. The Court finds that the standard of review that applies in this case is the manifest weight of the evidence standard.

2. Based on 40 ILCS 5/15-134.1(b), Defendants are obligated to accept the determination made by the educational entity as to the status of its employees.

3. The Court finds the College of Du Page has provided two different employment records to the State Universities Retirement System ('SURS'). SURS staff sought clarification from the College and the College reported that the Plaintiffs did not work at least half-time for the time periods in question. Relying upon that report, Defendants determined that Plaintiffs were ineligible to purchase prior service credit pursuant to 40 ILCS 5/15-113.1(c) for those periods.

4. Based on the presentation by the Parties, the Court finds that the final

administrative decision of the Defendants was not against the manifest weight of the evidence. The Plaintiffs' complaint for administrative review is hereby denied."

This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25                   A. Burden of Proof and Standard of Review

¶ 26    Our supreme court has stated that "under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33, 870 N.E.2d 273, 293 (2006). Plaintiffs' burden of proof in an administrative hearing is by a preponderance of the evidence. 5 ILCS 100/10-15 (West 2012). "With administrative cases, this court reviews the administrative agency's decision, not the circuit court's." *Kildeer-Countryside School District No. 96 v. Board of Trustees of Teachers' Retirement System*, 2012 IL App (4th) 110843, ¶ 20, 972 N.E.2d 1286.

¶ 27    "In administrative review cases, this court reviews factual question[s] under the manifest weight standard, questions of law *de novo*, and mixed questions of law and fact under the clearly erroneous standard." *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231, ¶ 13, 983 N.E.2d 125. "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent." *Adams v. Board of Trustees of the Teachers' Retirement System*, 407 Ill. App. 3d 592, 595, 944 N.E.2d 789, 791 (2011). "An administrative agency's decision is clearly erroneous where the reviewing court comes to the definite and firm conclusion the agency has committed an error." *Adams*, 407 Ill. App. 3d at 595, 944 N.E.2d at 792.

¶ 28    In the case *sub judice*, the parties disagree over the applicable standard of review on the service-credit issue. Plaintiffs argue the clearly erroneous standard applies, while defendants argue the manifest-weight-of-the-evidence standard applies. As the issue of plaintiffs' ability to purchase service credit centers on the factual question of whether they were employed at least one-half time at the College during the 1980s, we agree with defendants and find the manifest-weight standard is appropriate.

¶ 29              B. SURS Denial of Plaintiffs' Request To Purchase Service Credit

¶ 30    The SURS executive committee adopted the claims panel's decision as its findings of facts and conclusions of law. The claims panel stated the issue was whether plaintiffs met their burden of proving they were employed at least one-half time for the periods during the 1980s when they sought to purchase service credit.

¶ 31    The Pension Code allows SURS participants to purchase service credit for prior work performed when the employee "was employed at least one-half time for an employer preceding the date of becoming a participant." 40 ILCS 5/15-113.1(c) (West 2012). Whether a participant has worked at least half-time or more is a determination left to the employer since "the percentage of time employed shall be as reported by the employer." 40 ILCS 5/15-134.1(b) (West 2012).

¶ 32    The claims panel relied on Censky's email, which stated the Owens formula was in effect during the 1980s. Censky also indicated the College's policy 4456 did not deal with the percent of time worked by faculty members for SURS reporting purposes but dealt with how many hours a part-time faculty member was allowed to teach. The claims panel accepted Censky's email as evidence of the College's policy prior to 2007 and found policy 4456 did not overcome or contradict Censky's statements of what constituted the applicable policy.

¶ 33    Plaintiffs argue the decision by SURS to deny their requests for service credit is not supported by the evidence as it was based on improperly admitted hearsay found in Censky's email.

¶ 34    In administrative cases, the same rules of evidence applied in civil cases in the circuit courts shall also apply. 5 ILCS 100/10-40(a) (West 2012). "Evidence not admissible under those rules of evidence may be admitted, however, (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." 5 ILCS 100/10-40(a) (West 2012).

¶ 35    "Generally, hearsay evidence is not admissible in an administrative proceeding. [Citation.] However, where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error." *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501, 415 N.E.2d 1249, 1253 (1980).

¶ 36    Defendants argue plaintiffs cannot now object to Censky's email because they moved for its admission during the second administrative hearing in October 2011 and failed to raise a proper evidentiary objection before the administrative hearing officer.

¶ 37    "It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect." *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 508, 475 N.E.2d 879, 883 (1985). "In an administrative proceeding, 'hearsay evidence that is admitted without objection may be considered by the administrative body and by the courts on review.' " *S.W. v. Department of Children & Family Services*, 276 Ill. App. 3d 672, 682, 658 N.E.2d 1301, 1308 (1995) (quoting *Jackson*, 105 Ill. 2d at 509, 475 N.E.2d at 883).

¶ 38    In this case, plaintiffs' counsel moved to admit certain documents, including the Censky email, before the hearing officer in October 2011. Plaintiffs' counsel did not ask the hearing officer to exclude the Censky email from the record on the basis that it constituted inadmissible hearsay.

¶ 39    Plaintiffs argue they objected to Censky's email "at every opportunity." Plaintiffs rely on their counsel's June 21, 2010, letter to Karen Maggio, an executive assistant at SURS, that stated Censky had no foundation for her knowledge of when the Owens formula was used. Plaintiffs also cite an October 18, 2010, letter from plaintiffs' counsel to the deputy director of member services at SURS, which claimed Censky provided no foundation for her knowledge. In their statements of claims submitted prior to the October 2011 hearing, plaintiffs claim SURS offered no foundation as to Censky's knowledge of what formula the College used in the 1980s.

¶ 40    We find plaintiffs did not adequately object to the admission of Censky's email on

hearsay grounds. The 2010 letters were not addressed to the hearing officer and did not request the exclusion of Censky's email from the record or consideration. Moreover, the statements of claims do not object to the email on hearsay grounds and do not argue it is inadmissible. The arguments raised go more toward the weight to be given to the Censky email rather than admissibility. Without a valid hearsay objection, we find plaintiffs have forfeited their argument on appeal.

¶ 41    Even if plaintiffs offered a valid objection, we find any improper admission did not amount to prejudicial error. "We may rely on any basis appearing in the record to affirm an agency's decision." *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 787, 861 N.E.2d 216, 223 (2006). Here, plaintiffs applied to purchase service credit in the late 1990s for work they performed in the 1980s before they were SURS participants. The College used the Owens formula, and plaintiffs were able to purchase service credit for some quarters but not all. In 2007, after the issue involving the full-time faculty grievance, plaintiffs again attempted to purchase service credit. Benz found they were now eligible based on new calculations applied retroactively. However, an email from the College president had indicated the Owens formula was to be discontinued and the new formula was to be applied prospectively.

¶ 42    Upon noticing the discrepancies between the newly reported Benz figures with those previously reported in the late 1990s, SURS asked for clarification. The College noted the revised formula, pointed out the prospective nature of any changes, and corrected the reports to revert to the original percentage times for each plaintiff. Thereafter, SURS denied plaintiffs' applications.

¶ 43    The evidence in this case indicates plaintiffs were denied the opportunity to purchase service credit in the late 1990s because they did not qualify. The evidence also indicates the only reason they were determined to be eligible to purchase credit in 2007, after having once been denied, was based on an erroneously retroactive application of the SURS calculation by the College. Once the College reported the discrepancy after inquiry from SURS, the percentages were corrected and SURS denied the applications. We find this determination was not against the manifest weight of the evidence.

¶ 44    Plaintiffs, however, argue the decision by SURS to deny their requests to purchase service credit is contrary to this court's decision in *Wargo v. State Universities Retirement System*, 106 Ill. App. 3d 930, 436 N.E.2d 745 (1982). In that case, this court held SURS does not have authority to determine who is eligible to participate in the system. *Wargo*, 106 Ill. App. 3d at 933-34, 436 N.E.2d at 748. We stated "the employers decide who their employees are, and that decision determines eligibility to participate in the pension fund; we find no provision in the Pension Code granting that power to the Board of Trustees of SURS." *Wargo*, 106 Ill. App. 3d at 933-34, 436 N.E.2d at 748.

¶ 45    Plaintiffs argue SURS did not accept the College's initial report regarding their eligibility provided by Benz. Instead, they argue Lieb intervened and caused the College to recalculate their service credit using the Owens formula. Plaintiffs contend SURS wrongfully intervened as *Wargo* required SURS to defer to the College.

¶ 46    We find plaintiffs' contention without merit. The evidence indicates SURS was

confronted with Benz's recalculations, which would have allowed plaintiffs to purchase service credit that previously had been denied. SURS simply asked for clarification to clear up the confusion. Plaintiffs would have us believe SURS could never question even an obvious mistake but must take whatever percentages the College provides. Such cannot be the law. Here, SURS acted within the scope of its authority and deferred to the College as to the appropriate percentages of plaintiffs' workload.

¶ 47                              C. Equal Protection

¶ 48    Plaintiffs also argue the decision by SURS to deny their request for service credit violated their right to equal protection. We disagree.

¶ 49    Both the United States Constitution and the Illinois Constitution guarantee citizens equal protection of the law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. An analysis of an equal-protection claim is the same under the United States Constitution and the Illinois Constitution. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 116, 958 N.E.2d 227. "The equal protection clause guarantees that similarly situated individuals will be treated in a similar fashion, unless the government can demonstrate an appropriate reason to treat them differently." *Jonathon C.B.*, 2011 IL 107750, ¶ 116, 958 N.E.2d 227; see also *Kaczka v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 702, 707, 923 N.E.2d 1282, 1287 (2010). Review of an equal-protection claim is *de novo*. *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 379, 885 N.E.2d 1060, 1081 (2008).

¶ 50    Plaintiffs have failed to set forth a viable equal-protection clause claim in this case. Puccio's testimony during the hearings concerning three individuals she believed to have purchased service credit under the new formula at a time when plaintiffs were denied the same opportunity is not substantiated. Lieb indicated she had initiated the process for reviewing service purchased in other cases and action could be taken to rectify any errors. Nothing in the record corroborates plaintiffs' claim that they were treated differently from similarly situated individuals. With only bare allegations and unsupported conclusions, plaintiffs cannot even make out a *prima facie* case of an equal-protection violation.

¶ 51                              III. CONCLUSION

¶ 52    For the reasons stated, we affirm the circuit court's affirmance of the Board's final administrative determination.

¶ 53    Affirmed.

¶ 54    PRESIDING JUSTICE APPLETON, dissenting.

¶ 55    I respectfully dissent because the majority decision suffers from a fundamental inconsistency. On the one hand, the majority observes that under section 15-113.1(c) of the Pension Code (40 ILCS 5/15-113.1(c) (West 2012)), participants may "purchase service credit for prior work performed when the employee 'was employed at least one-half time for an employer preceding the date of becoming a participant.' " *Supra* ¶ 31 (quoting 40 ILCS

5/15-113.1(c) (West 2012)). Thus, under section 15-113.1(c), a participant's right to purchase service credit depends on an objective fact: whether the participant was employed "at least one-half time." 40 ILCS 5/15-113.1(c) (West 2012). The claims panel said that, in the administrative hearing, plaintiffs had the burden of proving that objective fact. "The claims panel stated the issue was whether plaintiffs met their burden of proving they were employed at least one-half time for the periods during the 1980s when they sought to purchase service credit." *Supra* ¶ 30. Likewise, the majority says that whether plaintiffs may purchase service credit "centers on the factual question of whether they were employed at least one-half time at the College during the 1980s" and hence, in this appeal, we should uphold the finding of SURS on that factual question unless the finding is against the manifest weight of the evidence. *Supra* ¶ 28.

¶ 56 On the other hand, under section 15-134.1(b) (40 ILCS 5/15-134.1(b) (West 2012)) as interpreted by SURS and the majority, the determination of the employer is conclusive. Whatever the employer says goes. "The percentage of time employed shall be as reported by the employer." 40 ILCS 5/15-134.1(b) (West 2012). Consequently, I am left wondering what was the purpose of having an evidentiary hearing before the claims panel. The outcome is predetermined, regardless of the evidence. The game is rigged. It would not matter if, in such an administrative hearing, the employee proved, as an indisputable objective fact, that he or she worked 16 hours a day, 7 days a week, for an entire quarter. In the view of SURS and the majority, the only relevant evidence would be the percentage of time the employer reported to SURS–even if, by the employer's own admission, the percentage of time the employer reported was objectively inaccurate.

¶ 57 In this case, the college ultimately reported to SURS that under the "Owens formula," plaintiffs were employed less than half-time in the 1980s. In conjunction with that report, however, the college informed SURS that the Owens formula was objectively incorrect and that under the correct methodology, *i.e.*, policy 4456, which the college applied to employees from 2008 onward, plaintiffs *were indeed* employed half-time in the 1980s. So, even if one accepted the questionable proposition that, under section 15-134.1(b), whatever percentage the employer reports trumps all other evidence, however compelling that other evidence might be, the employer in this case effectively *has* reported plaintiffs as working half-time in the 1980s, *i.e.*, by its admissions that (1) the Owens formula is objectively incorrect, (2) policy 4456 is objectively correct, and (3) under policy 4456 plaintiffs were employed half-time.